CHARLES LISLOFF, Jr. vs. SAMUEL HART et al.

The making of the deed to the son by H., vested a title to the land in him, and the subsequent destruction of it did not divest the title; and it must be considered as an advance made to his son by S., and the conveyance of the land a voluntary settlement by the father upon him.

A settlement, though voluntary, is not revocable.

This case does not fall within the statute of frauds of this State. Hutch. Code, 637.

If a father convey land to his son or have a deed made to him, with the intent to hinder, delay, or defraud creditors, or deceive those who might afterwards purchase the land, the deed will be avoided by the provisions of the statute of frauds.

ON appeal from the northern district chancery court at Carrollton; Hon. Henry Dickinson, vice-chancellor.

In 1846, I. H. Hanah was the owner of certain land; in February, 1846, Hanah and wife sold and conveyed said tract of land to Charles Lisloff, Jr., for the price of $850; the deed was duly executed, acknowledged, and delivered.

On the 15th day of March, 1848, said Hanah and wife executed a deed to Charles Lisloff, Sen., for the same land, which deed is antedated, and upon its face appears to have been made in February, 1846; and Osburn, one of the defendants, had full notice of the first sale. He procured Charles Lisloff, Sen., to execute a deed of trust on the same land for the payment of a debt due him, Osburn. The bill filed prays an injunction, and that said deeds be cancelled.

J. H. Osburn alone answered the bill: admits, that Hanah owned the land in 1846; denies that the sale was made to Charles Lisloff Jr.; but states that Philip Lisloff purchased the land for his own use, and paid for the same out of his own funds; but for fraudulent purposes to hinder creditors, he caused the conveyance to be made to his infant son, ten or twelve years old, (Charles Lisloff, Jun.)

In January, 1848, the respondent purchased of Philip Lisloff an undivided half of four acres, a part of said tract of land, and

accepted a deed for the same; that Philip Lisloff then stated, that he had a deed conveying said land from Hanah to himself; and sometime thereafter he was induced to suspect that he had been defrauded, and called upon Philip Lisloff to exhibit his title deed; that respondent then discovered that the deed was made to Charles Lisloff, Jr., the son of said Philip; that said Philip then stated, that he had directed John G. Harris, who wrote the deed, to make Charles Lisloff, Sen., the grantee therein for the purpose of avoiding trouble on account of old debts; that he then proposed to alter the deed by inserting Charles Lisloff, Sen.; that subsequently respondent and P. Lisloff, with Hanah and wife, went before N. A. Milton, justice of the peace, and Hanah and wife made two deeds on the 15th of March, 1848, but dated in February, 1846, as charged in the bill, making Charles Lisloff, Sen., the grantee in said deeds; that the deed before made to Charles Lisloff, Jr., was then destroyed, and P. Lisloff then gave respondent an order on Charles Lisloff, Sen., to make a deed of trust on the same land for the benefit of Osburn, the respondent, to secure the payment of three notes executed by said P. Lisloff, and he afterwards procured Charles Lisloff, Sen., to execute the deed in trust.

*Charles Sheppard*, for appellant.

The fact that the money was paid by his father does not change this result.

The relation of father and son rebuts the presumption of a resulting trust. See 2 Story, Eq. § 1203.

There is no proof of acts or declarations contemporaneous with the first deed that could change this result.

This doctrine was very fully considered in the case of *Sidmouth* v. *Sidmouth*, in which the court held, that a trust could be established only by contemporaneous acts or declarations. See 17 Eng. Ch. R.; 2 Bevan, 447.

Indeed, on principle, no other rule could be admissible.

The fact to be determined is, the intention at the time of the conveyance, and this could only be inferred from the acts and declaration thus made, and the analogies of the law sustain

this rule, for it is on this ground that those acts and declarations, which being *res gestæ* are admitted, which, if they had been subsequent to the principal fact to be explained, would be regarded as hearsay.

The only proof in the record, of what occurred at the time of conveyance, is the statement of Harris, who says, that the father directed the deed to be made to his son Charles Lisloff, Jr.; the witness at the time made a note in writing of this direction, and subsequently drew the deed in accordance with it. H. saw nothing at the time which could induce a suspicion of the good faith of the transaction. The son continued with the father in possession of the premises.

The subsequent acts relied on to raise a trust are, that the father sold part of the land to Osburn, and that he procured the deed made to the son to be cancelled. The answer of Osburn explains the character of the first act, that this sale was not made on an assumption that the son was a trustee, but on the false pretence that the vendor had a legal title by a conveyance made direct to himself.

If his answer is true, it not only discloses a fraud, but in a great degree attributable to his own neglect in not requiring the vendor to exhibit his title deed. This could give him no equity to disturb a title justly vested in the minor.

He was equally culpable in trusting to the pretence of a mistake to cancel the first deed.

He is presumed to know that no matter, *ex post facto*, could be allowed to alter what had been done, and rights vested.

The presumption of a mistake is not sustained by any proof, and this court would not give effect to subsequent cancellation, unless upon clear proof that such mistake existed. The testimony of Harris conclusively shows, that this pretence was false. He took at the time a note in writing of the direction given by the father, and afterwards prepared the deed in accordance with his written memorandum. The subsequent possession and use by the father cannot affect the title.

It is like the receipt of the dividend by Lord Stowell in *Sidmouth* v. *Sidmouth.* The father taking the profits during his life, could be no evidence of a trust for him, for it must be

intended that he should account as guardian. See *Lampleigh* v. *Lampleigh*, 1 P. Wms. 112; *Crabb* v. *Crabb*, 7 Eng. Ch. R. 149.

*George*, for appellees.

We insist that the deed was made by mistake to Charles Lisloff, Jr. Hanah, the grantor, swears to this fact positively. Philip Lisloff so declared himself. His declarations are admissible. *Sampson* v. *Sampson*, 4 Serg. & Rawle, 331; 11 Johns. R. 91. That it was a mistake, or fraud, is consistent with the whole course of Philip Lisloff. Any other conclusion is in direct conflict with his whole conduct in the matter.

We insist that the bill should be dismissed, on the ground that, if the original conveyance should stand, it would be a fraud upon the rights of Osburn, who is an innocent purchaser, without notice, for a valuable consideration.

"It is an established rule in equity, to give no assistance against a purchaser for a valuable consideration without notice." Fonblanque, Equity, 412, State Lib. ed. note *, and cases there cited. Most certainly it must not interfere in favor of a volunteer against such purchaser. *Fonbl. Eq.* 254.

This is an advancement by P. Lisloff to his son Charles, or it is not. The rule is, that the father taking the conveyance in the name of the son, is *primâ facie* an advancement, subject to be rebutted by other evidence.

We insist that there is sufficient evidence on the record to overrule that presumption. It is proved that P. Lisloff went into possession, removing a distance of two hundred miles to take possession; that he exercised ownership and control over it, building and improving, and himself laboring on it, with his younger sons; and that he sold the land to the defendant, Osburn. All these acts are inconsistent with the idea that he intended an advancement to his son. 11 Johns. 91; 4 Serg. & Rawle, 331; 12 Johns. R. 536, opinion of C. J. Spencer. Philip Lisloff does not appear to have any other property, and the presumption is strong that he had not, as he was engaged personally with his family in improving and working on the land in controversy. The fact that the deed was never recorded, is

also a strong presumption against the idea that he intended it as an advancement. This is the usual course in this country.

But suppose that Philip Lisloff intended an advancement, and that it was good and valid in the beginning. It may become fraudulent and void by the subsequent conduct of the father. 12 Johns. 559.

A voluntary advancement to a child is void against a purchaser with only constructive notice. 1 John. Ch. R. 267. This same principle is decided in same case on appeal. 12 J. R. 536. Except the sale is restrained to purchaser without notice, which is the case here. How. & Hutch. 370, § 2; where it is expressly enacted, that if any conveyance be made, &c., without consideration deemed valuable in law, if the same be for real estate, the same shall be recorded, &c.; if not, it shall be deemed fraudulent as to purchasers and creditors. This is like the statute of 27 Elizabeth, upon which the two last cited cases were decided.

This statute was made for cases of this sort, and includes cases where the grantor is not in possession, but the person making the settlement or advancement. The other registration act includes cases between grantor in the deed and other persons. Hutch. Code, 606, § 5.

Mr. Justice Yerger delivered the opinion of the court.

In 1846, Philip Lisloff contracted for the purchase of a tract of land situated in Carroll county, from Isaac H. Hanah, and on the payment of the purchase-money by him, Hanah, at his request and direction, conveyed the land by deed in fee-simple to his son, Charles Lisloff, Jr. Subsequently, in 1848, Hanah, at the request of Philip Lisloff, made another deed, by which he conveyed the land to Charles Lisloff, Sen., a brother of Philip, antedating this deed of the year 1846, and the deed to Charles Lisloff, Jr. was then destroyed. Charles Lisloff, Sen., afterwards, at the request of Philip, conveyed the land in trust to a man named Wales, to secure the payment of certain promissory notes, made by Philip Lisloff to the defendant Osburn. Osburn was present when the deed to Charles Lisloff, Jr., was destroyed, and was aware that it was destroyed for the

purpose of procuring Hanah to make another deed to Charles Lisloff, Sen., in order that he might execute the deed of trust to secure the notes.

On the facts disclosed by this record, although the purchase-money was paid by Philip Lisloff, we must consider it as an advance made to his son, and the conveyance of the land as a voluntary settlement by the father upon him. The deed made to the son by Hanah vested the title to the land in him, and the subsequent destruction of it did not divest it. The second deed, made by Hanah to Charles Lisloff, Sen., is inoperative, and cannot defeat the right of the son to the premises.

It is certainly true, as a general rule, where A. purchases a tract of land with the money of B., and takes the title in his own name, a trust results in favor of B. Yet where a father purchases, with his own money, property in the name of his child, it is, as a general rule, held and considered an advance or settlement upon the child; and, although it be a voluntary settlement, yet, as we held at the present term of this court, in the case of *Norman et al.* v. *Burnett*, it is not revocable by the father. See, also, *Verplank* v. *Sterry*, 12 Johns. R. 548, and 1 Vernon, 464, where the court say: "A settlement, though voluntary, is not revocable."

'Osburn, in his answer, states that the conveyance was made to the son in order to hinder, delay, and defraud, the creditors of the father; but there is not the slightest proof on this point. He also suggests that the deed was made to Charles Lisloff, Jr., by mistake of the draftsman, it having been intended by Philip Lisloff that the conveyance should be to his brother, Charles Lisloff, Sen. The testimony of Harris, who drew the deed to the son, proves the very reverse of this suggestion.

Osburn likewise states, that, in 1846, before the deed to Charles Lisloff, Jr., had been destroyed, and before the execution of the deed to the uncle, Charles Lisloff, Sen., believing that Philip Lisloff was the real owner of the land, he had purchased from him one half of four acres of the land, and of a saw-mill erected thereon, and that Philip told him at that time that he was the owner of the land, and had a deed for it to himself.

This statement cannot avail the defendant, for several reasons. First, because it is matter in avoidance, and there is no proof of it whatever, except the statement in the answer. Secondly, because he does not state that he had paid to Philip Lisloff the purchase-money before he was informed of the title of Charles Lisloff, Jr.; and thirdly, because the legal title never was in Philip Lisloff; and, therefore, by this deed, Osburn did not obtain the legal title, and cannot claim to be a *bonâ fide* purchaser for valuable consideration without notice. If he saw fit to rely upon the statement of Philip Lisloff, that he had the title, without demanding its production, he must abide the consequences of his own confidence; and if it has turned out that these representations were false, he cannot impute his injury to any other cause than his own laches.

Nor does this case fall within that provision of the statute of frauds (Hutch. Code, 637) which declares: "If any conveyance be of goods or chattels, and be not on consideration deemed valuable in law, it should be taken to be fraudulent within the act, unless the same be by will duly proved and recorded, or by deed in writing acknowledged or proved, and such deed, if for real estate, shall be acknowledged or proved and recorded in the county where the land conveyed is situated."

The conveyance in this case was from Hanah to Charles Lisloff, Jr., and was for valuable consideration, to wit, the purchase-money paid by the father, Philip Lisloff. Hanah was the grantor of the deed, and if it had not been recorded, subsequent purchasers or creditors of his, without notice of its existence, might have avoided it, because it was not recorded; but neither the letter nor reason of this part of the statute can be made to apply to purchasers or creditors of Philip Lisloff, in whom the title was never vested, and who, therefore, never had any interest in it which creditors could reach, or any title which he could convey to a purchaser. It must be understood in this connection, that we are treating the money advanced by Philip Lisloff as a *bonâ fide* settlement and advancement upon his son, because if there had been proof that he had advanced the money for the purchase of the land himself, and

252 HIGH COURT OF ERRORS AND APPEALS.

had the deed made to his son, with the intent to hinder, delay, or defraud his creditors, or to defraud or deceive those who might afterwards purchase the land from him, then the deed would be avoided by other provisions of the statute of frauds. But as we have before remarked, there is not the slightest proof of any such intent. The decree of the vice-chancellor must be reversed, and a decree rendered in this court in favor of the appellant, granting the relief sought by the bill.