GALLOWAY VS. ROBINSON ET AL.

Where the father advances the money for the purchase of lands, and takes the deed in the name of the son, upon the death of the son, without issue, the lands vest in the father in fee—in such case, the lands came to the son "on the part of the father" by gift, and were not a *new acquisition* by the son, within the contemplation and meaning of the act of Descents and Distributions of this State.

*Appeal from Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

Before the Hon. C. C. SCOTT and T. B. HANLY Judges, and Hon. F. W. COMPTON Special Judge. Hon. E. H. English, C. J. not sitting.

CUMMINS & GARLAND, for the appellant.

A person acquiring an estate from the father by devise, gift or descent, and dying without issue, the estate ascends to the father and his heirs. *Dig.* 437, *sec.* 10; *Kelly's heirs vs. Mc-Guire and wife et al.*, 15 *Ark.* 587.

The father paid the money and entered the lands in the name of the son: this is a gift of the land to the son by the father. 1 *Story's Eq. Pl.* 80, *sec.* 64: 1 *Jarman on Wills* 5236, *and note* 1 *citing authorities;* 5 *Watts* 113; *Fletcher vs. Ashburne*, 1 *Bro. C. C.* 497.

BERTRAND, for the appellees, relied upon the case of *Kelly's heirs vs. McGuire and wife et al.*, 15 *Ark.* 586, that the lands in controversy were a new acquisition, and upon the death of the father, who was entitled to their use for life, they descended to the brothers and sisters.

Mr. Justice HANLY, delivered the opinion of the Court.

This was an action of ejectment brought by the appellees against the appellant in the Pulaski Circuit Court for two tracts of land. Galloway interposed the plea of the general issue and to this plea issue was taken by the appellees.

It appears, from the transcript, that before the trial in the Court below, the parties by their respective attorneys appeared and filed an agreed statement of facts, and also their agreement " that the facts agreed upon shall stand, and that either party shall have the like benefit thereof on appeal or writ of error, as if the same were a special verdict."

The facts agreed upon are as follows:

" That on the 11th day of October, 1839, a patent was issued in due form of law, from the United States to and in favor of Francis Hardy Robinson for—" (the land in controversy.)

" That Hardy Robinson, the father of Francis Hardy, some time prior to the issuance of the patent, furnished the money and made said entry, and paid the money to the United States for the lands in the name of his son.

" That the plaintiffs are all children of Hardy Robinson, and full brothers and sisters of said Francis Hardy, who died before his father, and without being married or having any lawful issue.   That Hardy Robinson, the father, survived his son, Francis Hardy, several years and died before suit.   That Francis Hardy had no mother living at his death.

" That defendant has had possession and control of portions of the land in controversy since November, 1853, and the use and occupation of the same, which is worth $20 per annum.

" That in April or May, 1853, Hardy Robinson made his will in due form of law, whereby he devised to his wife, who is still living and is now the wife of the defendant, the land in question in fee, which will, after his death, was duly admitted to probate, and was probated and recorded in the Probate Court of Pulaski county, and remains in full force, said defendant having always claimed and controlled said land in right of his wife under said will."

By consent of parties, the cause was tried by the Court on this state of facts.

The appellees, on their part, moved the Court to find and declare the law to be; " that the lands in controversy were a new acquisition on the part of their brother Francis Hardy Robinson, within the contemplation and meaning of the Statute of descents and distributions of this State; and that on the death of their said brother, the title to said land devolved on his father for life, and on the death of the father, the said land vested in fee in them."

The appellant insisted, and moved the Court to find and declare the law to be: " that Hardy Robinson, by furnishing the money, and entering the lands in the name of his son, gave the lands to his son, and on the death of the son, the lands vested absolutely in the father—they having come to the son on the part of the father, by gift, within the contemplation and meaning of the act of descents and distributions of this State; and that by the will of the said Hardy, the lands were vested

in the wife of said defendant, and that in her right he was entitled to the possession thereof."

It farther appears by the transcript, that upon the agreed facts as above, the Court found for the appellees, and declared the law to be, under those facts, as set forth in the appellees' motion, wherein the Court was asked to declare the law, and not as in the motion of the appellant designed for the same purpose.

On this finding and the law thus declared, the Court below rendered judgment in favor of the appellees, for the premises in controversy, sixty dollars damages in the way of rents and profits, and cost of suit.

The appellant excepted, setting out in his bill of exceptions the agreed facts and the law which the Court was asked to declare as applicable to this case by the parties respectively, and appealed to this Court.

The chief question growing out of the record in this case, is, did the land in controversy come to Francis Hardy Robinson on the part of his father in the purview or meaning of our act of Descents and Distributions. If it did the judgment of the Court below is wrong and must be reversed. But on the other hand, if the land in question is a new acquisition to Francis Hardy Robinson, then the judgment is right, and must be affirmed.

1. Is the land in question a *new acquisition*, in the meaning of the act regulating descents and distributions in this state?

The provisions of our statute involved in this inquiry, are as follows:

" Sec. 1. When any person shall die, having title to any real estate of inheritance, or personal estate not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed in parceny to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: first, to children, or their descendants, in equal parts: second, if there be no children, then to the father, then to the mother; if no

mother, then to the brothers and sisters, or their descendants, in equal parts," etc.    *   *   *

" SEC. 10. In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs: if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition, it shall ascend to the father for his life time, and then descend in remainder to the collateral kindred of the intestate, in the manner provided in this act," etc.    *   *   *

" SEC. 22 The expression used in this act, " when the estate shall have come to the intestate on the part of the father," or " mother," as the case may be, shall be construed to include every case where the inheritance shall have come to the intestate by gift, devise or descent, from the parent referred to, or from any relative of the blood of such parent."

We do not propose, in the present case, to attempt a construction of the statute, farther than it is deemed to be absolutely involved in the question before us. Our design in drawing from the statute, as we have done above, is simply to show the application of our views to the particular provision implicated, considered in reference to the context bearing on the subject at hand.

The subject of this statute was before this Court at the January term, 1855, and many of its provisions being involved in the case of *Kelly's heirs vs. McGuire et al.*, 15 *Ark. Rep.* 555, it underwent then a very thorough examination and consideration, which resulted in an elaborate opinion delivered by HEMPSTEAD, Special Judge, in which it was construed with reference to the points then before the Court. The point before us, being, to some extent, involved in that case, was also considered, and the statute construed in reference to it. The construction adopted by the Court in that case, we shall adopt in this, but as the facts in this case, in reference to the point in hand, differ from those in *Kelly's heirs vs. McGuire et al.*, on the same point, we shall have to call to our aid other principles adapted to the

precise case before us, to the end that the statute may be construed with reference to it.

In *Kelly's heirs vs. McGuire, etc.*, it was said that a *new acquisition*, " in the sense intended by the statute, is one which the intestate has acquired by his *exertions and industry*, or by *will or deed from a stranger*. In other words, it is an estate derived from any source other than *descent, devise or gift* from the father, or any relative in the paternal or maternal line"—citing *Brewster vs. Benedict*, 14 *Ohio Rep.* 385, and *Butler vs. King*, 2 *Yerg. Rep.* 116: see also *Haywood's heirs vs. Moore*, 2 *Humph. Rep.* 587–8.

As a farther expression of opinion in relation to the sense of the statute in reference to the term " *new, acquisition*," this court, in the same case, proceeds to say: " If the son should purchase land from the father or mother for a valuable consideration, it would be a new acquisition and descend as such: because nothing is received by way of bounty at the hands of the ancestors; which is the case as to lands descended from, or devised, or given by them to the intestate, and it was thought reasonable that they should remain in the blood from which they came."

From this it is manifest, in contests for land between the devisees of the father, and the brothers and sisters of the son, that those claiming under devise from the father, are not confined to the deed to the son, as affording the only competent evidence of the source from which he derived the estate; but that testimony may be gone into with the view to show from whom the consideration proceeded which superinduced the conveyance to the son; and though it should turn out in proof that the conveyance to the son was from one other than the father, yet if, in point of fact, it were so made at the instance of the father, and for a consideration paid by him, the estate so derived would as much be one which " came by the father" in the purview of the statute, as if it had actually been directly conveyed by the father to the son. Such, we regard to be the effect of the statute, and the manifest result of the construction placed on it by this Court in the case quoted from above.

26

See, also, *Pate et al. vs. Johnson et al.*, 15 *Ark. Rep.* 275; *Thompson's Heirs vs. Thompson's Devisees*, 1 *Yerg. Rep.* 97; *Lislaff vs. Hart et al.*, 25 *Miss. Rep.* 245; *Haywood's Heirs vs. Moore, ub. sup.*

The case of *Pate et al. vs. Johnson et al.*, was a suit in chancery to correct an alleged mistake as to an item of $800, for a tract of land in Missouri, supposed to have been given by Edward Johnson to his son James, and which, in a proceeding for a division of the estate of the former among his heirs, had been charged as an advancement, and hence, so much paid on the distributive share of the son in the estate of the father. The deed from the father to the son was exhibited with the bill, and purported to be a deed of general warranty, and expressed one thousand dollars as the consideration. The answer denied the payment of the consideration, and insisted that the deed had been made by the father to the son as an advancement, and the proof seemed to sustain the answer. On this state of facts this Court said: " The recital of the consideration money and its payment in a deed, is only prima facie evidence, and parol proof is admissible to contradict it—as when the recital is relied upon as evidence of a sale to a child, instead of a gift."

The case of *Thompson's Heirs vs. Thompson's Devisees*, was also a suit in chancery, to have one-half of a tract of land devised by Joseph Thompson to his daughter. The bill stated that half of the land devised by Joseph to his daughter belonged to complainant—that complainant was son of Joseph—that Joseph, with the view of advancing him, had bought the tract of land in question, and took a title bond therefor, in their joint names—that the whole of the consideration was paid by the father—that after the execution of the bond, and the payment of the consideration money by the father, and before the execution of the deed thereunder, he became displeased with complainant and required the party, from whom the land was purchased, to make a deed to the tract to himself, and having possession of the bond, gave it up to the obligor. The proof sustained the allegations in the bill. The opinion of the Court

was delivered by HAYWOOD, Judge, who said: " The payment of the purchase money by A., who purchases in the name of B., will make B. a trustee for A. Not so, however, if B. were not a stranger, but a son unadvanced: for then B. would not be a trustee for A. When, therefore, the bond is made for title to A. and B., and the money is paid by A., the father, this is an advancement to B., and the equitable estate vests in him, and on his death descends to his heir; and if the deed be made to A., instead of A. and B., the grantee becomes a trustee for B., of the legal estate, and must convey as he shall direct."

In *Lislaff vs. Hart et al.*, one of the points decided was, that when a father pays the consideration, and has a deed for land made from a third person to his son, in contemplation of law, the land so conveyed will be regarded as an advancement by the father to the son, and the conveyance itself a voluntary one.

The case of *Haywood's Heirs vs. Moore*, was a bill to obtain a decree for 329 acres of land under the following state of facts. Haywood conveyed to his daughter Harriet and her assigns forever, land in consideration of $1,000 paid him, to be held during her natural life, and after her death, to such of her children, their heirs and assigns forever, as she and her first husband should limit and appoint, and for want of such appointment to all her children equally, their heirs and assigns forever: Held,

1. That the deed vested in Harriet an estate for life, with remainder over.

2. That upon the birth of a son, the remainder became vested in him, subject to be divested by the birth of other children, or by the exercise of the power of appointment.

3. That the consideration expressed in the deed must be regarded as the true and only consideration moving to the execution thereof, in the absence of evidence to the contrary; and that the land must be regarded as purchased by the mother, the life estate for herself and the remainder for her children.

4. That the remainder having been purchased by the mother for the child, and conveyed to him directly, was therefore de-

rived from the mother within the meaning of the Tennessee statute of Descents and Distributions, and consequently, upon the death of the son, without issue, vested in the mother.

GREEN, Judge, delivering the opinion of the Court, said: "If a parent purchase a tract of land from a third person, for his child, and cause a deed to be made from the vendor to the child, that is an advancement, which must be brought into hotchpot, upon a division of the parent's estate," (citing *Thompson vs. Thompson*, 1 *Yerg. Rep.* 97,) and continued: "If it is an advancement by the parent, is it not derived from him? The word *derived* used in the act of 1784, chap. 22, sec. 7, is not a technical word. It means, if the land proceeded from either parent, by which either a legal or equitable title is vested in the child, if he should die without issue, or not having any brother or sister, or the lawful issue of such, who shall survive, the estate of such intestate shall be vested in fee simple in the parent from whom the same was derived. If a parent give a land warrant to a child, or assign a title bond, and the grant in the one case, or the deed in the other, be made directly to the child, the land so obtained is derived from the parent, within the meaning of the acts of Assembly," etc.

It is true, the word "derived," which is in the Tennessee statute, is not in ours, but we apprehend, the phrase "come by the father by gift," and "come by the mother by gift," as made up by construing the 10th and 22d sections of our act together, mean about the same thing, and that it was no more the design of our Legislature that the word "gift," in those phrases should have a technical meaning given to it, than the word "derived" used in the Tennessee statute, should have. We, therefore, construe the word "gift" in our statute, to mean not only a direct conveyance of land, by a parent to his child, without consideration deemed valuable in law, but also a conveyance from a third person to such child, if procured, and the consideration therefor be paid by the parent.

The consequence of the foregoing views, is, that upon the death of Francis Hardy Robinson, the son, his father, Hardy

Robinson, became vested with the land in˙ controversy in this suit, and had a right to devise it to whom he chose under the restrictions specified in the statute; and it being conceded by the parties, that it was in reality devised to his widow, at present the wife of the appellant, under whose right, it is also admitted, he held possession of the premises in question, it follows that appellant was entitled to the land sued for, and that the Court below should have so found and declared the law to be. Not having done so, the judgment must be reversed, and the cause remanded to the Pulaski Circuit Court to be proceeded in.