COOLIDGE *v.* BURKE.

Opinion delivered April 13, 1901.

1. DESCENT AND DISTRIBUTION—PERSONALTY CONVERTED INTO REALTY.— Where a surviving partner, for the purpose of winding up the partnership business, took land in payment of debts, thereby converting personal assets into real, upon a settlement being had the deceased

partner's interest in the land goes as realty to his heirs, and not as personalty to his distributees. (Page 241.)

2.  DESCENT—ANCESTRAL ESTATE.—Where a granddaughter took land by descent from her maternal grandfather, and died intestate and without issue, the land goes to her maternal uncle as the heir of her maternal grandfather, and not to her father as her next of kin. (Page 243.)

Appeal from Phillips Circuit Court.

HANCE N. HUTTON, Judge.

This is an appeal from a judgment overruling a demurrer to the following complaint:

"Comes the plaintiff, F. Noel Burke, and complains of the defendant, Charles R. Coolidge, Sr., and for cause of action says: That he is the owner of the following lands lying in said county, to-wit, the northeast quarter of section 28, the east half of the northwest quarter of section 28, the west half of the southwest quarter of section 22, northeast quarter of the southwest quarter of section 22, west half of northwest quarter of section 22, south half of the southeast quarter of section 21, northeast quarter of southeast quarter of section 21, southeast quarter of the southwest quarter of section 21, southeast quarter of the northeast quarter of section 21, all in township 2 south of range 4 east, known as the 'Taylor Place;' lot 37 in E. J. Lewis division of the city of Helena in what is known as the 'Pat Cassidy' tract, being one acre, more or less. And claims title thereto as follows: That on the 23d day of April, 1872, one Henry P. Coolidge departed this life in this county, leaving him surviving his widow and relict, Eliza Coolidge, his son, Charles R. Coolidge, the defendant herein, and his granddaughter, Mary E. Burke, born on the —— day of December, 1865, who was the daughter of plaintiff, as his only heir, the mother of said Mary E. Burke, who was the daughter of said H. P. Coolidge, having departed this life prior to the death of said H. P. Coolidge; that by his last will and testament the said H. P. Coolidge devised and bequeathed a large amount of real and personal property to his said son and granddaughter, after having made ample provisions for his said widow, and directed that it be divided equally between them, share and share alike, and named as his executors the defendant and John J. Hornor, all of which will more fully and at large appear by reference to said will, which appears of record in the proper office, and a duly certified copy of

which is filed herewith, marked 'Exhibit A,' and which was duly probated, and is in full force and effect. That at the time of the death of the said Henry P., he and the 'defendant were carrying on a large mercantile business as partners under the firm name and style of 'H. P. Coolidge & Company,' in the city of Helena, in said county of Phillips. That, after the death of the said Henry P., the defendant, as surviving partner, proceeded to wind up said business and to account to said executors. That among the assets of the said firm there was a debt of $20,000 due from one W. P. Taylor, which was secured by a deed of trust on the real estate described above and in controversy in this suit, which is known as the 'Taylor Place,' maturing November, 1870. That upon the undivided half of this place there was a subsisting and prior deed of trust to secure a debt amounting to the sum of $350, in favor of W. D. S. Taylor. That, after the death of the said W. P. Coolidge, the said W. D. S. Taylor brought suit in the Philips circuit court in equity to foreclose his lien on the undivided one-half of said land, and enforce the payment of said debt. On the 23d day of June, 1873, the defendant, Charles R. Coolidge, as surviving partner of the firm of H. P. Coolidge, made himself party defendant, and prayed that the lien of the mortgage of the firm of H. P. Coolidge & Company might also be foreclosed, and the land, subject to the debt of the said W. D. S. Taylor, be sold to satisfy the claim of H. P. Coolidge & Co., amounting to the sum of $23,180.50— all of which was so decreed by said court, and in pursuance of said decree said land was sold by commissioner of said court duly appointed for the purpose. That after said decree, and pending the sale, the said Charles R. Coolidge purchased the decree of the said W. D. S. Taylor at and for the sum and price of $3,150.48, which sum he as such surviving partner borrowed from the firm of T. L. Airey & Co. for the purpose, and at the sale of said land he bid the same in at the sum of $2,000, no part of which he paid, he having purchased the decree of the said W. D. S. Taylor, and as such surviving partner holding both debts, and taking the said commissioner's deed in his own name for all of said lands, but holding the same, as such surviving partner, for and as the property of the said firm of H. P. Coolidge & Company. * * * That afterwards, litigation having arisen between the plaintiff, as guardian of Mary E. Burke, and the defendant touching the settlement of the partnership affairs of H. P. Coolidge & Co. in the year 1876, in the circuit court of Phillips county, it was, among

other things, found by said court .that the lands herein sued for were a part of the assets of the firm of H. P. Coolidge & Co., but standing in the name of the defendant, C. R. Coolidge, and purchased by him after the death of H. P. Coolidge and the dissolution of the firm of H. P. Coolidge & Co., as above set forth. * * * That on, to-wit, the —— day of November, 1879, the defendant, Charles R. Coolidge, and Eliza Coolidge, widow and relict of the said Henry P. Coolidge, filed a complaint in the circuit court of Phillips county against Mary Elizabeth Burke and this plaintiff as her guardian, praying for a partition and division of the real estate of the said H. P. Coolidge and H. P. Coolidge & Co.; that commissioners were appointed by said court to make partition, who, among other things, found and reported to the court that the lands here in controversy were held in the name of C. R. Coolidge, and belonged one-half to him as surviving partner of the firm of H. P. Coolidge & Co., and one-half to the estate of H. P. Coolidge, deceased, and in. said partition the commissioners awarded the lands in controversy to the said Mary E. Burke, which report of said commissioners was in all things approved and confirmed by the court and the title to said lands, among others, was by the judgment, order and decree of said circuit court vested in the said Mary E. Burke. * * * That, as surviving partner of said firm of H. P. Coolidge & Co., and in the process of winding up and settling its affairs, and in the payment of a debt due said firm, the defendant, the said Charles R. Coolidge, on —— day of January, 1877, took a deed to said lot 37, of the Eli J. Lewis division of the city of Helena, above mentioned, in his own name, but for the use and benefit of the said firm of H. P. Coolidge & Co.,. which lot, under the decree of partition aforesaid, although standing in the name of the defendant, C. R. Coolidge, in fact belonged to the firm of H. P. Coolidge & Co., and was partitioned and allotted to the said Mary E. Burke by the decree aforesaid.    That after said decree the said Mary E. Burke entered upon and took possession of said lands above described, and continued to hold the same as her sole and separate property and estate until her death on the 17th day of November, 1892, long before which date she had become of full age; that said Mary E. Burke on the last-named date departed this life intestate, without issue and unmarried, leaving plaintiff, her father, her sole surviving heir.    That, having left no unsettled debts, no administration was had upon her estate, but that soon after her death the defendant took possession of the·

land herein mentioned, claiming title to the same as the remaining and surviving heir of his father, the said Henry P. Coolidge, claiming that said estate was ancestral, and that, upon the death of the said Mary E. Burke, it reverted to him, and has ever since held the same. That said defendant, Charles R. Coolidge, Sr., is in the unlawful possession of said lands, and has been for six years last past, during all of which time plaintiff has had the title to said lands, and still has, and the right to possession thereof; and plaintiff says that, by reason of the said wrongful possession of said lands by said defendant, he has sustained damages in the sum of $4,000. Wherefore he prays judgment for the recovery of the possession of the said lands and for said damages for the unlawful detention of the same."

*R. W. Nicholls* and *Rose, Hemingway & Rose,* for appellant.

The estate was an ancestral one. 15 Ark. 556; 24 Am. & Eng. Enc. Law, 395; 2 Humph. 588; 1 Ohio, 395; 5 *id.* 522. A mortgagee has an *interest in* the land. 35 Ark. 85; 49 Ark. 214; 7 Ark. 310; 18 *id.* 166; 34 *id.* 346; 43 *id.* 504; Tied. Real Prop. §§ 287, 319; 98 Mass. 107, 113. On the death of one partner, the surviving partner took all the firm property for the purpose of winding up the business, and the heirs of the deceased partner acquired no right to any specific asset of the firm until the partnership was so wound up. 48 Ark. 563; Pars. Part. 371; 16 B. Mon. 634; 2 Barb. Ch. 165; 11 Barb. 75; 59 N. W. 1011; 48 Pac. 861; 5 Heisk. 757; 4 R. I. 207; 47 Ala. 104. As to duty of surviving partner, see: 19 Ark. 443; 26 *id.* 135; *id.* 154.

*M. L. Stephenson,* for appellee.

The deed of trust was but a mortgage. 31 Ark. 429; 53 Ark. 545; 18 Ark. 53; 43 Ark. 488; 25 Ark. 279; 18 Ark. 91; *id.* 166; 31 Ark. 581; 43 Ark. 519; 31 Ark. 429; 1 Jones, Mortg. §§ 2, 700. The property was a new acquisition. 19 Ark. 398. The mortgage was a personal asset, and the acts of the surviving partner could not change its character, so far as concerns the case.

Wood, J. 1. "Where conversion is rightfully made, whether by the court or a trustee, all the consequences of conversion must follow if there be no equity in favor of the heir or any one else for reconversion." *Foster* v. *Foster,* L. R. 1 Ch. Div. 588; *In re Simmons,* 55 Ark. 485. This principle applies here. The mortgage

held by the firm of Coolidge & Company, being but a security for debt—a chose in action—was personalty. *Turman* v. *Sanford, ante,* p. 95. When the elder Coolidge died, the surviving partner held the partnership assets as trustee, for the sole purpose of winding up the partnership buisness. *Hill* v. *Draper,* 54 Ark. 395. As such, it was his right, as well as his duty, to gather in and make available all the assets of the firm for satisfying firm creditors, adjusting partnership equities, and then to hold the residue for distribution to those entitled thereto. In this process of winding up the partnership, all partnership assets of whatever form, by a fiction of equity, for commercial convenience, were personalty in the hands of the surviving partner. But, when the necessity required, in the business of bringing the partnership affairs to a close, the surviving partner had the unlimited power and right, so long as he acted in good faith, to change the form of the assets from personalty to realty, and the reverse. That is, he had the right of conversion. He exercised that right in this case, converting personalty into realty. There is no charge of fraud. Therefore the asset must continue as realty, and go to the devisees under the will as such, unless there be some equity in favor of appellee for reconversion. There is no such equity. *In re Simmons,* 55 Ark. *supra.* Before the affairs of the partnership were concluded, that which was personalty by rightful process of conversion had become partnership realty, and it so remained until the time for distribution. This brings the case within the rule of the American cases announced by Chancellor Walworth in *Buchan* v. *Sumner,* 2 Barb. Ch. 165, and quoted by this court, through Judge Cockrill, in *Lenow* v. *Fones,* 48 Ark. 563, as follows: "As between the personal representatives and the heirs at law of a deceased partner, his share of the surplus of the real estate of the co-partnership, which remains after paying the debts of the co-partnership, and adjusting all the equitable claims of the different members of the firm, as between themselves, is considered and treated as real estate."

But it is urged that the death of Coolidge, intervening the conversion of the mortgage into the real estate in controversy, renders inapplicable the above doctrine to the case at bar. While the death of Coolidge *ipso facto* dissolved the partnership, the *delectus personae* being at an end, it did not *eo instanti* wind up the concern and distribute its assets. Firm assets remained such during the time required to pay off the debts and

get the assets in shape for distribution. During this time neither the surviving partner, in his indivdual capacity, nor those standing on the rights of the deceased, had any interest which they could take. Had Coolidge lived, and the partnership been dissolved by mutual consent, or otherwise, he could not have received or held any of the firm assets in his own individual right, until same had been distributed to him in his character as an individual. Those succeeding to his rights as distributees or devisees under his will take only what he had or could have taken, had he been living and the partnership been dissolved, *i. e.* his individual interest in the assets of the firm. As was said by Chief Justice Shaw in *Howard* v. *Priest,* 5 Metc. 582: "The true and actual interest of each partner in the common stock is the balance found due him after the payment of the debts and the adjustment of the partnership account. * * * And, as the widow and heirs claim only in right of the husband and father, such derivative right, in equity, will extend no further in behalf of the wife and children than that of the partner from whom it was derived." This is the inevitable result, it seems to us, under the law peculiar to partnership property. The law of descents and distribution operates upon the property of the individual, and not upon the property of the firm, and there is no individual property until the firm property is at an end, which does not occur until its debts are paid, its affairs closed, and the residue of the assets distributed. The learned counsel have not cited us to a case where the facts are exactly similar to the case at bar, and after a somewhat exhaustive research we have not been able to find one. But the doctrine announced is logical and sound, and supported by analogous principles announced by many eminent text writers and learned courts. Par. Part. 371; Lindley, Part. § 341; Story, Part. §§ 90-95, and note; *Cobble* v. *Tomlinson,* 50 Ind. 550; Collyer, Part. § 135, note; 1 Bates, Part. §§ 290, 297, note; *Dyer* v. *Clark,* 5 Metc. 562; *Woodward-Holmes Co.* v. *Nudd,* 58 Minn. 236, S. C. 59 N. W. 1011, 27 L. R. A. 340; *Griffey* v. *Northcutt,* 5 Heiskell, 757; *Sternberg* v. *Larkin,* 48 Pac. 861; *Tillinghast* v. *Champlin,* 4 R. I. 207.

2. The land in controversy was clearly ancestral, and in the paternal line. It was not acquired by Miss Burke through "any industry or exertions of her own," nor did it come to her "by the deed or will of a stranger to her blood." She took it by devise from her grandfather, who was also the father of appellant. The land was therefore not a new acquisition, but ancestral. Having

come from the father of appellant, the grandfather of Miss Burke, at her death without issue of her own blood it must go back to the line whence it came—to appellant as the heir at law, and not to appellee as the next of kin. *Kelly's Heirs* v. *McGuire,* 15 Ark. 556; *Galloway* v. *Robinson,* 19 Ark. 396; 24 Am. & Eng. Enc. Law, 399.

The complaint states the facts, which the demurrer admits, and it follows that the demurrer should have been sustained, as the complaint fails to state a cause of action.

Reversed and remanded, with directions to sustain the demurrer.