## FRENCH v. VANATTA.

### Opinion delivered June 24, 1907.

1. PARTNERSHIP—POWER OF SURVIVING PARTNER.—While a surviving partner may sell the partnership property, in order to wind up its assets, he may not be a purchaser at his own sale. (Page 311.)

2. SAME—ELECTION OF REMEDY.—Where the surviving partners of a firm filed an *ex parte* petition in chancery for the sale of its assets, and the administrator of the deceased partner intervened after the sale was made, but before it was confirmed, and elected to litigate

over the proceeds of the sale, without attacking the sale, he cannot subsequently question the right of the court to make the sale. (Page 311.)

3. SAME—WINDING UP ASSETS—PARTIES.—In a suit in equity by the surviving members of a partnership to have the firm assets sold and converted into money the heirs of the deceased partner are neither necessary nor proper parties, where the estate of the deceased partner was represented by an administrator. (Page 312.)

4. SAME—LIEN FOR PARTNERSHIP DEBTS.—While the share of a partner is subject to a lien for all debts due to the partnership, it is not subject to a lien for all debts due to the other partners, even though these debts were created by borrowing money that went into the partnership funds. (Page 314.)

Appeal from Washington Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*Williams & Buchanan* and *L. W. Gregg,* for appellants.

1. The court was without jurisdiction to order the sale on the mere *ex parte* petition of the surviving partners. 26 Ark. 135; 26 Ark. 154; 54 Ark. 395. Parsons on Part. § 440; 48 Ark. 557; 36 Ark. 465; 74 Pa. 391; 64 N. Y. 472; 48 L. R. A. 299; 2 Barb. Ch. 165; 15 Enc. Pl. & Pr. 1077; *Id.* 1074. The administrator, widow and heirs of the deceased partner being necessary parties to the petition of the surviving partners, their non-joinder is ground for reversal, even if objection had not been raised in the lower court. 15 Enc. Pl, & Pr. 688-9; 3 Ark. 364. See also 54 Miss. 146; 18 Wall. (U. S.) 471; 9 *Id.* 501; 24 Ark. 371; 25 Ark. 495-8; 60 Ark. 526.

2. There was no competent evidence upon which to base the charge of $500 against C. J. French on account of salary drawn. The master erred in permitting incompetent testimony contrary to the statute. Kirby's Digest, § 3093. And the testimony of the parties show that the books kept by deceased were not regular and fairly kept books of original entries, and it was not shown that he "had the reputation of keeping correct books." Kirby's Digest, § § 3071, 3072.

3. The item of $700 growing out of the transaction with Greenwald & Company from the purchase of machinery was admitted by French to be a mistake, but a partner is not liable to his co-partners for honest mistakes. Parsons on Part. (2 Ed.), 235; 145 U. S. 592. Moreover the transaction was rat-

ified by the other partners by their telegram of May 3, 1904; and, if so, it was chargeable to the firm, and not to the partner. 17 Am. & Eng. Enc. of L. 1220.

4. The note of $1,876.19 was not such a claim as entitled the surviving partners to have same paid before the distributive share of the assets of the firm reached the administrator. 19 Eng. R. Cas. 618; Bispham, Eq. 335; 97 N. Y. 395; Parsons on Part. 450; 99 U. S. 119.

5. On Mrs. French's intervention, the proof is ample that she advanced the firm $1,400 which her husband used for the firm and in conducting its business.

*E. B. Wall,* for appellee.

1. Whether at law or in equity, where all the evidence has not brought into the transcript, the presumption is in favor of the judgment. 63 Ark. 513; 67 Ark. 464; 70 Ark. 127; 72 Ark. 185; *Id.* 21; 74 Ark. 427; 77 Ark. 195.

2. The administrator and widow, having raised no issue in the lower court as to its action in ordering the sale, report and approval thereof or the making of the deed, will not be heard to complain here on that account. 64 Ark. 305; 69 Ark. 23; 74 Ark. 557; *Id.* 88. Nor can they object here for the first time to an alleged want of necessary parties. 74 Ark. 615.

3. Under the undisputed facts in this case, there existed a pressing necessity for immediate action. It is admitted that the surviving partners could have wound up the business of the firm. 69 Ark. 237; 54 Ark. 395. Having this right, they would not lose it by asking a court of equity to superintend the process.

4. As to the items of $500 on account of salary and $700 on account of the Greenwald transaction, the evidence is sufficient to sustain the master's findings. Appellants were actively present during all the proceedings before the master, and can not complain of lack of notice. Inasmuch as this was not an action either by or against the executors, administrators or guardians, appellants can not invoke the aid of the statute to exclude the testimony of surviving partners.

Both items are shown to have been made up entirely from statements and figures in the handwriting of French, and the Greenwald item is shown by the evidence to have been a matter settled between the partners during the life time of French.

5. The note of $1,876.19 was part of the partnership account, and should have been considered by the master in the settlement.  69 Ark. 237.

6. 'The claim of the widow for $1,400 was properly disallowed.  By her own evidence it appears that during her entire married life it was her custom to turn over to her husband all of her property, placing same under his control and management without check or guard.  She can not now complain. 74 Ark. 166; 67 Ark. 111.

HILL, C. J.   John C. Vanatta and Fred Rose and C. J. French, of Brookston, Indiana, formed a partnership to conduct a canning business at Prairie Grove, Washington County, Arkansas, and French moved to Prairie Grove to take charge of the installation of the plant and the management of the business, and was to receive $100 a month as managing partner. The financial interests of the partnership were to be principally looked after by Vanatta and Rose, who were interested in banking and other large affairs in Brookston.  Each partner was to contribute $7,500 to the partnership.  Vanatta and Rose contributed their part as needed, but French had difficulty in raising his part, as he was a man of limited means, and was assisted from time to time by his partners.  The final form of such assistance was represented by a note to the Brookston Bank for $1,876.19 by French, upon which his partners were sureties, and after his death was paid by them and presented as a claim against his distributive share of the firm assets.

After French had been in charge for eleven months he died. Vanatta and Rose filed an *ex parte* petition in the Washington Chancery Court, setting forth the situation of the partnership affairs and showing the necessity for the sale of the plant. The court appointed a master and commissioner, and ordered a sale, after appraisement, for not less than two-thirds of the appraised value.  At such sale the partners bid two-thirds of the appraised value of the property, and their bid was accepted. After the sale, but before its confirmation, Wm. French (a brother of C. J. French) as his administrator, and Emma A. French, widow of said C. J. French, became parties to the proceedings, and each filed an intervention.

The sale was confirmed, and the deed made to said parties.

The intervention of Wm. French as administrator was in the form of an answer to the allegations of the *ex parte* petition of Vanatta and Rose. He denied that the deceased, French, was indebted to the firm, but alleged that the firm was indebted to him in the sum of $1,200 salary, and the further sum of $56.82, money advanced by him, to the firm; and practically admitted that the said French was indebted to the individual members of the firm, but alleged that the court had no jurisdiction of such claims; and prayed proper relief. This intervention or answer was met by a demurrer, which was overruled, and then by an answer, in reply to which the alleged indebtedness to C. J. French was denied; and, on the contrary, it was alleged that he was indebted in an unnamed sum to the partnership over and above his salary and his partnership interest. Later, an order was entered by the court making the minor heirs of C. J. French parties. Process was issued, and a guardian *ad litem* was appointed for them. The guardian framed other issues different from these of the widow and of the administrator, one of which was that the sale was for an inadequate price and without authority of law, and asked that the same be set aside. The court made an order continuing the case over for a term in order to give the minors an opportunity to present evidence sustaining their allegations. Upon that hearing the court confirmed the sale as against them and held against them in other matter in issue between them and the plaintiffs. Mrs. French in her intervention claimed that the partnership was indebted to her for moneys advanced it. She was heard upon this, and the finding was against her. The master took a great deal of testimony, had before him the books of the concern, together with witnesses in regard to same, and made out no less than five reports. Some of these are exhaustive in detail. The master seems to have gone into the facts fully, and in the main his findings were sustained by the chancellor. The administrator, the widow and the guardian of the minors have appealed, and ask a reversal as to five matters, which will be discussed in order.

1. It is insisted that the sale made on the *ex parte* petition of Vanatta and Rose as surviving partners, without service being had on the heirs of French, was absolutely void; and should be set aside.

The surviving partners had a right to wind up this partnership in their capacity as surviving partners, and as such had a right to sell the property. In fact, a sale was shown to be the only feasible way in which to pay the debts and preserve the property from loss. Either it had to be sold or the business carried on by the surviving partners until the canning season was at an end in order to avoid loss; and it would have been well within the rights of the surviving partners to have wound up the affairs through a sale of the partnership assets and distributed the proceeds after paying the partnership debts and adjusting the equities among themselves. They were trustees to wind up the affairs of the concern, and their powers were commensurate with their trust. Parsons on Partnership, § § 345-6; *Coolidge* v. *Burke,* 69 Ark. 237; *Hill* v. *Draper,* 54 Ark. 395. But when a partner exercises the right of sale, he can not be the purchaser at the sale. Parsons well says: "Thus, like other trustees, they can not sell the property of the firm and buy it themselves." Nor can they even take the property at is true value. Parsons on Partnership, § § 345, 348.

Hence, the sale to the partners was void if dependent upon their right as surviving partners to make the sale; and if dependent upon the right of the chancery court to make it, then it was only binding to such persons as were parties to the proceedings in chancery. At the time the sale was ordered there were no parties except the surviving partners, as they had filed an *ex parte* petition. Later, the administrator became a party to the procedings, before the sale was confirmed, making intervention in which he raised issues with the surviving partners, but not upon the sale. Had he attacked the sale, it would have been the duty of the court to set it aside, as the administrator was not a party when it was ordered and when it was held, and he had a right to have looked after the interests of his estate at a sale of its assets. But he did not question the right of the court to make the sale nor the adequacy of the price received. In fact, tendering issues upon other matters was acquiescence in the sale. No relief in this court can be granted him as representative of the estate for the error in making the sale under the *ex parte* petition, as he elected to litigate over the proceeds of the sale, rather than to attack the sale itself.

As to the heirs, the case is different. They did not become parties until long after the sale had been confirmed, and they attacked the sale in their answer, although they have not sustained their allegations by evidence. But opportunity was given them to have the sale set aside. This, however, would not meet the requirements of the law if the heirs were necessary parties to these proceedings. They had a right at every substantial step to have had their interests watched by a guardian, and it will not do to say that, although they did not show good cause against the void sale, they can not set the same aside. Judge EAKIN in *Freeman* v. *Russell*, 40 Ark. 56, very well stated this proposition as to proceedings against parties where minors are necessary without having service upon the minors, as follows: "Courts of justice ought not to do justice by piecemeal when it can be done in one suit without great inconvenience. * * * The decree must be reversed and the cause remanded to give the defendant, Robert L. (a minor) a day in court. He must be served by some appropriate mode, have a guardian *ad litem* appointed after service, who must put in an answer denying all material allegations of the bill. He will be entitled to time to take all the proof his guardian *ad litem* may be advised to be necessary, and will not be bound by the proof now in, as it was taken before he became a party." See *Gannon* v. *Moore, ante* p. 196.

But were the heirs necessary parties to the proceedings? The status of a partnership upon the death of one partner was fully considered by this court in *Coolidge* v. *Burke,* 69 Ark. 237. The court said: "The law of descents and distribution operates upon the property of the individual, and not upon the property of the firm, and there is no individual property until the firm property is at an end, which does not occur until its debts are paid, its affairs closed, and the residue of the assets distributed."

This property consisted of both real and personal property, and was an entity as a manufacturing plant, and as such was sold for the purpose of winding up the affairs of the partnership. Whatever realty there was became converted into personalty. It was decided in *Coolidge* v. *Burke, supra,* that where there had been a conversion of the partnership assets in that case from personalty into realty, the converted asset descended according to its then character, and not according to its prior character.

This is in consonance with *Lenow* v. *Fones,* 48 Ark. 563; In re *Simmons,* 55 Ark. 485.

From these principles it is readily seen that the heirs were neither necessary nor proper parties to this suit, as the administrator represented the estate after the conversion of the realty into personalty; and he elected to approve the irregular method of conversion, and he was capacitated as representative of the estate to do so. That left no interests rendering the widow or the heirs at law necessary or proper parties. Hence there can be no reversal for error upon this unnecessary branch of the case.

2. Two questions are presented by appellants for reversal, which are dependent entirely upon the facts. One was a charge against French of $500 for salary account alleged to have been received by him, and the other was a charge of $979.10 for subsidy collected by him. The court has gone carefully into the evidence on these matters, and it is satisfied with the finding of the chancellor, especially as the record upon these points does not show affirmatively that all the evidence which was before the chancellor is here. A large amount of money was subscribed by the citizens of Prairie Grove as a subsidy for the location of the canning factory at that place, and French was entrusted with receiving and collecting the subscriptions. Much testimony was taken upon this subject, and upon request of the administrator of French the court directed the master to again proceed to Prairie Grove and take additional testimony and make further investigations, which was done, resulting in a reduction of the charge of $300, leaving the amount charged against French $979.10. The evidence fails to show error in these charges.

3. The next item complained of was one of $700, known as the Greenwald matter. The facts concerning this are peculiar. The different members of the firm received several quotations for the machinery for the plant. Vanatta and Rose stated that they could get the machinery for $1,300. French wrote them that he had an offer from the Greenwald Company to furnish just what they wanted for $1,135, and he closed a deal, as he thought, at that figure. It seems that the machinery was what they required, and made to order according to a contract made with French acting for the firm. When it was completed, the Greenwald Company delivered it to the railroad company and

sent the bill to Vanatta and Rose at Brookston, the bill was for over $2,300. They at once notified the Greenwald Company to hold the machinery as French had informed them that the bill would not exceed $1,135. Then it developed that French had made a mistake, due entirely to his own carelessness, regarding the cost of the machinery. A controversy arose at once between French and his partners and another between the firm and Greenwald Company. Meantime the machinery was being held by the railroad company, and demurrage charges were accruing against the firm.

To settle these controversies, French, acknowledging they were due to his oversight, offered to pay the difference between what the partners could have got the machinery for and what he contracted to pay; and they affected a compromise with the Greenwald Company by which the bill was reduced to $2,000. French at first charged himself with $1,000, and afterwards, by reason of this compromise, the amount was reduced to $700, being the difference between what the partners expected to pay for the machinery and what they did pay.

This is a hard charge to be made against the estate of French, as the machinery was shown to be of the value contracted to be paid for it. But he made the contract for a valid consideration to satisfy outstanding controversies between himself and his partners and between them and the machinery company, and must abide by it, as the courts cannot unmake contracts validly entered upon, in the absence of fraud, mistake or other well known ground of equitable interference, which do not exist here.

4. The next matter urged upon the court is the intervention of Mrs. French, in which she claims that she advanced $1,400 of her own money to the firm. That she advanced money to her husband, and he used that money in contributing his share to the firm, is unquestionably true; but the evidence does not convince that she was advancing it to the firm, or that the other members of the firm knew anything of the source of these funds which French advanced *pro tanto* as contributions to his share in the partnership.

5. The only other matter urged upon the court is as to the $1,876.19 note, which Vanatta and Rose paid to the Bank of

Brookston as sureties of French, and which was charged against French's share of the partnership in the settlement of the affairs by the master and approved by the court. A partner's lien extends to all the partnership assets, and is for the purpose of burdening the partner's share, after payment of partnership debts, with all debts which he owes to the partnership; and secures the adjustment of balances and cross demands between partners for inequality of capital or shares; and for other firm accounts, but it does not extend to the payment of the individual debts of one partner to the other partners. As to individual debts, one partner has no priority over other creditors of his partner; and in this instance they have no claim superior to the rights of the widow. They are mere creditors of French's estate by reason of having become subrogated to the debt of the Bank of Brookston which they paid as his sureties, and have no priority by reason of the partnership relation or the fact that the borrowed money went into the partnership funds. The principle controlling this is well settled in the authorities. Parsons on Partnership, § 351; 2 Bates on Partnership § § 820-01; 22 Am. & Eng. Enc. Law (2 Ed.), 131-2; *Uhler* v. *Semple,* 20 N. J. Eq. 288; *Moffatt* v. *Thompson,* 57 Am. Dec. 737. It was recognized in *Nichol* v. *Stewart,* 36 Ark. 612.

For the error in charging the distributive share of French in the partnership with the $1,876.19 note, the cause is reversed and remanded, with instructions to re-state the account in conformity herewith.