MARTIN v. BLYTHEVILLE WATER COMPANY.

Opinion delivered November 9, 1914.

1. MECHANIC'S LIENS—RECEIVERSHIP.—The appointment of a receiver does not alter or affect the rights of parties to property or give to or take from them any liens which they have acquired or are entitled to.

2. MECHANIC'S LIENS—CHANCERY JURISDICTION.—An action to foreclose a mechanic's lien may be brought in the chancery court.

3. MECHANIC'S LIEN—HOW CREATED—COMMON LAW RIGHT.—No lien for work done or material furnished is given by the common law or in equity, and such lien can be acquired only by virtue of a statute.

4. MECHANIC'S LIENS—STATUTORY REQUIREMENTS.—Where a material man did not attempt to assert his lien within ninety days as provided by statute he loses all right to assert it.

Appeal from Mississippi Chancery Court, Chickasawba District; *Charles D. Frierson,* Chancellor; reversed.

STATEMENT BY THE COURT.

On May 28, 1913, appellants, as holders of first mortgage bonds of the Blytheville Water Company, instituted this action in the chancery court against that company and others to foreclose a mortgage on the properties of said company, and, on the same day, a receiver was appointed to take charge of its property and assets. On the 3d day of February, 1914, Joe Roeder filed an intervention in said action and asked for judgment against the receiver in the sum of $162.90 for work done and material furnished to the water company prior to the institution of this action and asked that the amount due him

be declared a first lien on the mortgaged property. The facts are as follows:

The Blytheville Water Company was a corporation, organized for the purpose of constructing, owning, maintaining and operating a system of waterworks in the city of Blytheville and was granted a franchise for that purpose. On the 1st day of July, 1911, it executed a trust deed to the Central Bank & Trust Company by which it conveyed to it in trust all its properties and franchises to secure an issue of $70,000 of bonds which were to be used in the construction of said water plant, and for other purposes. On the 20th day of November, 1912, the water company tendered its plant for inspection and acceptance by the city and the city refused acceptance. A short time thereafter the water company employed an expert engineer to go over its entire plant and system and check the same up with the specifications provided for in the franchise granted it. The engineer advised them as to what additional work should be done before the plant would meet the requirements of the franchise. Thereupon the water company entered into a contract with Reese & Roeder, a partnership, to put in a valve at the corner of Main and Second streets in the city of Blytheville, and to put in a valve at the corner of Vine and Second streets, and to make an extension of its pipe line to Vine and Second streets and to put in a valve at the fire hydrant at its pumping station. This work was done by Reese & Roeder in March, 1913, and they charged therefor the sum of $162.90. The work was done according to contract, and the amount charged was a reasonable price therefor. In April, 1913, the partnership was dissolved and Reese assigned his interest in the claim against the water company to Roeder. After the water company had completed its plant and before it had been accepted by the city, the deep well of the company became clogged or choked with sand and the city refused to accept the plant until the well was repaired. The company attempted to repair the well, but was unsuccessful. A limited time was thereafter given the company by the city either to repair

the well or bore a new one. The water company was without funds and had made default in the payment of the interest in the trust deed above referred to. The holders of the first mortgage bonds, as above stated, instituted this action to foreclose the mortgage and at the same time asked for the appointment of a receiver, which was made on the 28th day of May, 1913. The court authorized the receiver to take charge of the properties and assets of the company and gave him authority to have bored a new deep well.

In September, 1913, Roeder presented to the receiver his account for the work done and material furnished as above set forth, and asked that said claim be allowed as a first lien upon the property of the water company as a mechanic's lien under section 4972 of Kirby's Digest. It is conceded that he did not comply with any of the requirements of the statute in regard to mechanic's liens until he presented his claim to the receiver in September, 1913.

The chancellor found in favor of the intervener Roeder, and decreed that the receiver pay him the amount of his claim and that said claim be declared a first lien on assets of the water company in the hands of the receiver. To reverse that decree, appellants have prosecuted this appeal.

*J. S. Allen,* for appellants.

1. Intervener was not entitled to preference on account of or for equitable enforcement of a statutory lien. He was at no time entitled to a statutory lien. A strict construction of the statute will be followed in determining those who are within its protection. 51 Ark. 356; 54 Ark. 522; 51 Ark. 334; 80 Ark. 516.

2. Had Reese & Roeder originally been entitled to a mechanic's lien, it was lost by failure to comply with the statute regulating the filing of such claims. Kirby's Dig., § 4981. The fact that the property was in the hands of a receiver in no way affected general creditors of the company, and would have been no defense to an action to

enforce a mechanic's lien, if one existed.  32 Ark. 406; *Id.* 59; 57 Ark. 284.

3.  Appellant's mortgage, under the express provisions of the statute, is entitled to priority.  Kirby's Dig., § 4972.

4.  No equitable right of preference exists by reason of the nature of the work done.  For original construction work done under contract with the company prior to the appointment of a receiver, there is no equitable right to a preference.

The doctrine of preferential liens has been almost universally restricted to railroad cases.  It has not been extended to private corporations dedicated to the more limited use of the local public, such as water, gas, electric light or telephone companies.  128 U. S. 416; 95 Tenn. 143; 8 Utah 15; 2 Dav. (Ky.) 178.  In the decisions as to private corporations on the question proper of preferential liens, that is, claims created prior to the receivership, the doctrine applied to railroad cases is never applied unless there is a very clear case of diversion of current income to the payment of mortgage debt.  107 Fed. 23; 106 Ala. 633; 35 Fed. 436; 50 Fed. 481.  See, also, 105 Fed. 123; 176 U. S. 298; 107 Fed. 23; 92 Fed. 246; 120 U. S. 667; 57 Ark. 335.

*Appellees, pro se.*

The character of the work done and materials furnished, bring the firm of Reese & Roeder clearly within the provisions of the statute.  Since they were entitled to a lien, under the statute, their right was not lost because they failed to perfect the lien as required by the statute, the property subject to such lien having passed into the possession of the court.  51 Ark. 312; 23 Fed. 673.

The intervener is asserting his right as a member of the firm which was entitled to the lien.  He does not stand in the position of an assignee of the claim.  27 Cyc. 258.

HART, J., (after stating the facts).  The agreed statement of facts shows that the work for which the intervener attempted to assert a lien was done in March, 1913,

and that the amount claimed was due him when the work was done. Section 4981 of Kirby's Digest, provides, in effect, that it shall be the duty of every person who wishes to avail himself of the mechanic's lien act to file with the clerk of the circuit court of the county in which the erection to be charged with the lien is situated and within ninety days after the work is done a just and true account of the demand owing to him. The stipulation of the parties shows that this section of the Digest was not attempted to be complied with by the intervener until September, 1913, at which time he presented to the receiver a verified statement of his account. Counsel for intervener contends that this was a substantial compliance with the statute, and that the appointment of the receiver released him from the provisions of the statute requiring him to file his claim within ninety days. We do not agree with him in this contention.

In the case of *Richardson* v. *Hickman, Admr.,* 32 Ark. 406, the court held, in effect, that the fact that property is in the hands of a receiver in an equitable proceeding is no defense to an action to enforce a mechanic's lien against it.

In Rockel on Mechanics' Liens, section 213, it is said: "As a general rule the mechanic's lien statutes fix the time within which an action of foreclosure shall be brought, and, as a matter of course, if the action is not brought within that time it will fail. When the case clearly is not within the statutory limit, considerations of equity will not prevail over the statute and extend the time, nor may statutory provisions relating to the time of foreclosure be waived, unless the conduct of the parties is such as will permit of no other conclusion."

In Boisot on Mechanic's Liens, § 348, that author said: "The fact that, before suit is brought to enforce a mechanic's lien, the property on which the lien is claimed has been placed in the hands of a receiver, does not destroy the lien, or prevent such suit from being brought, since the result of a foreclosure would not disturb the receiver's possession, but would merely give the

purchaser at foreclosure sale the right to intervene in the suit in which the receiver was appointed.''

See, also, *Withrow Lumber Company* v. *Glasgow Investment Co.,* Circuit Court of Appeals, Fourth Circuit, 101 Fed. 863, where it is held: 1. ''A mechanic's lien, being purely statutory, can only arise where all the requirements of the statute have been substantially complied with, and a provision requiring the filing of an itemized account of the work or materials for which the lien is claimed is a substantial one, which must be observed.

''2. The appointment of a receiver by a court for property upon which buildings are being erected under contract with the owner does not relieve the contractor from the necessity of complying with the statutory requirements in order to entitle him to a mechanic's lien thereon.''

(1) In that case the court said that the appointment of a receiver does not alter or affect the rights of parties to property or give to or take from them any liens they have acquired or are entitled to, and several cases from the Supreme Court of the United States, as well as decisions of State courts, are cited to support the statement.

Such is the effect of the holdings of this court: *Jordan* v. *Harris,* 98 Ark. 200; *Buchanan* v. *Hicks,* 98 Ark. 370; *Arkansas Cypress Shingle Co.* v. *Meto Valley Railway Company,* 97 Ark. 534. In the first mentioned case the court held that the receiver of an insolvent corporation stands in the place of the corporation and has only such rights as it had, so that the rights of third parties are not increased, diminished or varied by his appointment. In the last mentioned case the court held that the receiver of an insolvent corporation takes its property burdened with all the equities to which it was subject in the hands of the corporation.

Again it is contended by counsel for the intervener that he could not assert his lien after the receiver was appointed, because under section 4983, of Kirby's Digest,

liens acquired by virtue of the mechanic's lien act must be enforced in the circuit court of the county where the property on which the lien is attached is situated. In Rockel on Mechanics' Liens, § 198, the author says that the act usually provided by statute is not regarded as giving an exclusive remedy, but that it is merely cumulative, and the debtor may pursue whatever other remedy he may have to secure payment of his debt, and in support of the text, cites *Murray* v. *Rapley,* 30 Ark. 568.

(2) In the case of *Kizer Lumber Company* v. *Mosely,* 56 Ark. 544, the court also held that an action to foreclose a mechanic's lien can be brought in the chancery court.

Finally it is contended by counsel for the intervener that he is entitled to an equitable lien, but we do not think his contention in this respect can be sustained. The rule giving priority to certain unsecured claims against property in the hands of a receiver over a recorded lien is generally worked out in connection with railroad receiverships. In applying the rule it has been frequently said that every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the course of business shall be paid from the current receipts before he has any claim upon the income. In discussing the rule in the case of *Barstow* v. *Railway Company,* 57 Ark. 334, the court said: "The doctrine of all the cases is that for the current running expenses, those outlays for necessary employees, repairs of machinery and road, fuel for engines and all such incidental expenditures as are necessary to keep the road as a going concern, the current receipts must be first applied in payment, and if this fund has in any measure been improperly diverted to the payment of any part of the mortgage security, then there arises an equity to have a restoration of this diverted fund, and to that extent the creditor, even though he be unsecured, if his claim belongs to this favored class, may have his debt, to the extent of such diversion, paid out of the proceeds of the foreclosure suit and sale. The idea being that the mortgage-creditor is

entitled to payment in the first instance of only the net gainings of the road, the actual running expenses having the first right to be paid; and hence if any part of the current earning be paid to the bond-creditor, leaving unpaid a current expense claim, this would be in the first instance an improper appropriation of so much of the current earnings, and the bond-creditor, to get his foreclosure, must return this sum to its proper fund. But such rule does not apply at all to .debts of original construction. These debts are supposed to be paid out of the fund arising from original sale of stock and bonds and have no claim upon the current earnings of the road, through which alone the equities of preferred creditors are reached.''

See, also, *Citizens Trust Company* v. *National Equipment & Supply Co.* (Ind.), 41 L. R. A. (N. S.) 696, and case note. In that case, the court held: 1. ''Where the current income of a water and light company which has mortgaged its property, franchises, after acquired property, and income, is applied to betterments, claims for materials and labor necessary to keep the plant a going concern, which should have been satisfied out of such income, are entitled to priority out of the proceeds of a foreclosure sale under the mortgage.

''2. If material and labor furnished to keep a water and light company a going concern were not to be paid for when furnished, but payment was to be postponed until it could be made from earnings, the lapse of more than six months before the appointment of a receiver will not defeat a right to priority of claims growing out of them over an existing mortgage, if earnings were diverted to betterments.''

If it can be said that the rule should apply to water companies (which we do not decide), the facts do not bring the present case within the rule. Here there has been no diversion of the current revenue derived from the operation of the plant to the payment of the interest or principal of the mortgage bonds or for the improvement of the plant. The plant itself was never in operation,

and was never accepted by the city. The claim of the intervener was for work done in the construction of the plant and he can not, therefore, have any equitable lien for his claim.

(3-4) No lien for work done or material furnished is given by the common law or in equity, and such lien can only be acquired by virtue of a statute. As we have already seen, the intervener did not attempt to assert his lien within ninety days as provided by statute, and for that reason has lost his right to assert it.

It follows that the decree of the chancellor was wrong, and it will be reversed with directions to dismiss the petition of the intervener for want of equity.