Sutton *v.* McClain.

4-4389

Opinion delivered October 26, 1936.

Rehearing denied in part and granted in part, December 14, 1936.

*F. N. Burke, Jr.,* and *Daggett & Daggett* for appellant.

*Hal B. Mixon, E. J. Butler, C. W. Norton* and *Ross Mathis,* for appellees.

BUTLER, J. The action from whence this appeal comes was begun on January 8, 1931, by suit filed by the Lee County National Bank against M. Lesser, surviving partner of the firm of O. C. Sutton & Company, and Mrs. Gladys Maberry McClain to recover on a promissory note executed by the defendants. Mrs. McClain answered on April 6, 1931, admitting the allegations of the complaint, but, further pleading, alleged that she was an accommodation maker of the note and entitled to judgment against M. Lesser and the partnership in the event she was compelled to pay the same. She set out the nature of the assets coming into the hands of M. Lesser as surviving partner and alleged that at the death of O. C. Sutton the partnership was indebted to various creditors upon unsecured notes and instruments secured by lien upon certain tracts of real property belonging to the partnership; that but a small part of the indebtedness of

the partnership had been paid and that the current rents from the real property and the value of the assets of the firm was greater than the total amount of the various debts. She further alleged that the surviving partner had failed to account for rents collected from certain properties and had converted such rents and proceeds from other assets to his own use.

Mrs. McClain further alleged that M. Lesser, the surviving partner, had reached the age where he was no longer capable of managing the properties of the firm and prayed that the cause be transferred to the chancery court of Lee county and that a receiver be appointed to take charge of the assets for the purpose of conserving the properties for the benefit of the creditors and that he be ordered to settle the affairs of the firm under orders of the court and that the various creditors be made parties to the action to the end that the partnership be settled by one suit and without a multiplicity of actions. The petition was amended on April 14, 1931, by striking therefrom the allegation that M. Lesser had mingled the assets of the partnership with his personal assets and that he had converted the same to his own use or dissipated the same. On that day M. Lesser and Mrs. McClain appeared by their respective attorneys before the chancellor, who, upon a consideration of the pleadings as amended, found that a receiver should be appointed as prayed. Thereupon, on that date, Hon. Griffin Smith was appointed receiver and, after filing his oath and bond, directed to take charge of said assets and hold the same subject to the orders of the court or judge thereof.

On April 18, 1931, the receiver filed his oath and executed bond in the sum required by the court.

On May 7, 1931, decree and judgment was entered in favor of the plaintiff, Lee County National Bank, in the sum prayed and the case was continued for the settlement of all matters alleged in the answer and cross-complaint of Mrs. McClain. On July 20, 1931, on petition previously filed by Mrs. McClain, an order was

made directing the receiver to employ competent persons to make an audit of the records of the partnership.

Various creditors intervened and filed their claims against the partnership and on December 9, 1931; A. S. Sutton intervened without waiving any rights he might have against M. Lesser individually or as surviving partner of the firm of O. C. Sutton & Company, or against the administratrix of the estate of the deceased partner. He moved the court to declare him a preferred creditor, basing this motion on a judgment secured by him in the Lee circuit court on April 15, 1931, against the above-named persons. He further alleged that the case which resulted in this judgment was set for trial on April 7, 1931, and was continued solely at the instance of M. Lesser who, with his attorney, secured an order from the judge of the Lee chancery court in chambers and without notice to him, the said A. S. Sutton, placing the partnership in the hands of a receiver; that this action was for the fraudulent purpose of preventing the said Sutton from procuring a judgment in his said action in the circuit court. In this connection, he further alleged that had he known of the intention to appoint a receiver he would have contested said action, and because of said circumstances he alleged his judgment to be a prior lien against the properties of all the defendants and the other creditors.

On application of one of the creditors, the court ordered an appraisal of the value of the assets of the partnership. It was found that the total value of these amounted to $9,527.94. Subsequent to the appraisal a petition was filed by one of the creditors setting out that the assets consisted solely of real estate in Lee county, and setting forth the names of the several creditors and the amounts due each including that of appellant, A. S. Sutton. It was alleged that no other persons had any right or interest in the properties and that in equity the claimants are the beneficial owners of the same with interest proportionate to their respective claims. Circumstances were alleged tending to establish the facts that the real estate could not be sold except at a great

sacrifice and there was a prayer that the court award to each of the creditors specific portions of the real estate to apply to their respective claims. This petition was in response to the petition of F. N. Burke, Jr., substituted receiver, the Hon. Griffin Smith having previously resigned, for an order of sale of the assets for the purpose of distribution.

The cause was finally submitted to the court in November, 1935, upon the various pleadings and reports of the receiver and appraisers. A decree was rendered on January 17, 1936, which, after reciting the history of the case, held that the valid claims amounted to a total of $20,201.54, among which was the claim of A. S. Sutton, which was decreed not to be prior to the other claims, but on a parity therewith. The appraisers had filed a list of the assets which they divided into twelve items. The court found that the values fixed by the appraisers were fair and reasonable and their value to be as appraised. The court made the following finding:

"The court doth further find that all of the above claims are partnership debts of the said O. C. Sutton & Company; and that the said partnership has no property available to the claimants except the properties hereinafter listed; and doth find that by reason of the large amounts of delinquent taxes against the said property and the sacrifice of value commonly attending a public sale, and, by reason of the large inequalities in the various claims above listed, a sale of said properties would be seriously detrimental to the rights of the creditors, or some of them; and doth find that equity can best be accomplished by apportioning the said property in kind among the creditors according to the appraised value thereof as hereinafter shown." Thereupon, the court set apart to the several creditors, to apply upon their respective claims at the net appraised value the several, items listed by the appraisers and incorporated in the decree, being "in each instance, 49.17 per cent. of the said claim." Then followed the items allotted to each one of the creditors.

While the foregoing is not a complete history of the various proceedings had in the chancery court, we deem it sufficient for an understanding of the questions raised on this appeal, the first of which is that the court was without jurisdiction. This contention is based upon the theory that each creditor had a full, perfect and complete right of action at law against the surviving partner for the enforcement of his obligation against the partnership, and that the allegations of Mrs. McClain's answer and cross-complaint are that the partnership assets were sufficient to discharge its obligations. It developed, however, during the course of the proceedings in the chancery court that Mrs. McClain was mistaken and that, in fact, the partnership was insolvent. Moreover, the appellant did not object at any time during the course of the proceedings as to the jurisdiction of the chancery court or move that the cause be remanded to the law court, but, instead, in his intervention, asked for affirmative equitable relief. Therefore, he is now in no position, such relief having been denied, to object to the jurisdiction of the court on appeal.

It is next contended for reversal of the decree that the court erred in denying appellant's claim as a prior lien on the real property of the partnership. This contention is based on § 8603, Crawford & Moses' Digest, which provides: "After the receiver shall take the oath and give bond as required by this act, he shall possess all the powers which a receiver in a court of chancery can have or possess, unless otherwise provided in this act;" also, upon certain language used by this court in *Deming Investment Company* v. *Bank of Judsonia,* 170 Ark. 65, 278 S. W. 634, and *Campbell* v. *Hargraves,* 181 Ark. 492, 26 S. W. (2d) 876. That from the first case is as follows: "The receiver did not take the oath of office nor file his bond as receiver until the 28th day of June, 1924, hence we do not think his appointment became effective until that date. * * * Consequently we are of the opinion that the Bank of Judsonia as transferee of the rent note of the mortgagor is entitled to the rent which had been earned or accrued when the receiver qualified as such on the 28th day of June, 1924, and that

the mortgagee is only entitled to the rents as of that date."

"A receiver of an insolvent corporation takes its property burdened with all the equities to which it was subject in the hands of the corporation." *Arkansas Cypress Shingle Company* v. *Meto Valley Railway Company,* 97 Ark. 534, 134 S. W. 1195. The language used in the Hargraves case, *supra,* is: "The receiver was appointed upon application of the mortgagee. After his appointment the receiver gave bond as required by the court and duly qualified as such receiver. After this the property which he was ordered to take charge of was deemed to be in custody of law."

In construing the language used in an opinion the points decided must be noted, especially where one construction might indicate the overruling and change of a well-established legal principle. In *Deming Investment Company* v. *Bank of Judsonia, supra,* the controversy was between the assignee of a rent note given by the tenant of a mortgagor and the purchaser of the property at the foreclosure sale. The purchaser, who happened to be the mortgagee, claimed the proceeds of the rent note under the doctrine announced in *Oliver* v. *Deffenbaugh,* 166 Ark. 118, 265 S. W. 970, to the effect that a purchaser at a mortgage foreclosure sale is entitled to possession and to the rents and profits * * * after notice to quit and demand for rents and profits have been made in the absence of a reservation of rent contained in the mortgage. It was held that the principles of law announced in that case did not control in the case under consideration for the reason that the rights of *bona fide* purchasers of the rent notes were not involved. It was observed that the Legislature had provided for the appointment of a receiver to take charge of the mortgaged property under certain conditions, one of which being that the mortgage had not been performed and the property was probably insufficient to discharge the mortgage debt. It was noticed that it "was not known that there would be a deficiency in the mortgage indebtedness until the commissioner's sale was held on June 9, 1924. No

other ground for equitable interference in the possession of the mortgagor of the mortgaged premises was shown.'' This is the reason for the conclusion reached by the court that there was no sequestration of the rents until that time.

In *Campbell* v. *Hargraves, supra,* the point decided was the liability of a receiver to the mortgagor for loss occasioned by negligence in failing to take charge of and protect certain livestock and other chattels after his appointment and qualification, and that his failure to do this was not excused by the fact that he was informed by the mortgagee that the livestock was old and worthless and that he did not desire the receiver to go to the expense of taking charge of, and caring for them. It was pointed out that, since the mortgagor had no right to interfere with the possession of the receiver without permission of the court, the receiver should have secured his discharge to the end that the mortgagor might have been notified so that he could have taken possession of the animals.

The above cases we think were not intended to, and do not, alter the well-established rule stated in § 1579, Pomeroy's Equity Jur., 4th ed., cited by appellee, as follows: ''The general rule is well established that the title and right of a receiver relates to the time of the order appointing him. It is said 'the appointment of a receiver is completed at the farthest by the filing and entering of the order appointing him although before he proceeds to the discharge of his duties he may be directed to execute and file a proper bond. When that is done, he can take manual possession of the property and his title relates back to the time of his appointment.' '' This is announced as the established doctrine in High on Receivers, (4th ed.) § 121 (a).

''The moment the receiver is appointed he becomes an officer of the court, and from that time the property is in *custodia legis* and the court has power to preserve it.'' Clark on Receivers, (2d ed.) vol. 1, page 334.

Appellant has not insisted on his allegation of fraud committed in the procurement of the order for the ap-

pointment of a receiver, but rests his contention solely on the position that the appointment did not become effective until the taking of the oath and the execution of a bond by the receiver which was subsequent to the date of his judgment. We recognize the correctness of the declaration in 23 R. C. L., § 60, page 56, cited by appellee, to the effect that a receiver holds the property coming into his hands as did the person for whose property he is the receiver and that the lien of a judgment or execution is not destroyed by his appointment. This principle we expressly approved in the case of *Martin* v. *Blytheville Water Co.,* 115 Ark. 230, 170 S. W. 1059, but we think the principle has no application to the case at bar for the reason that the judgment was not obtained prior to the receiver's appointment. We have examined the other authorities cited by appellant, but are of the opinion that they in no way alter or subtract from the general rule quoted from Pomeroy's Eq. Jur., *supra.* The only effect our statute has (§ 8600 *et seq.,* Crawford & Moses' Digest) is to defer the right of the receiver to take actual charge of the property, but his appointment serves to vest the court with jurisdiction over it so that no lien can be acquired by third parties by bringing suit or taking judgment on a suit already pending. Clark on Receivers, (2d ed.) vol. 1, page 835.

It is lastly insisted that the trial court erred in decreeing partition in kind among the creditors. We agree with this contention, but the reason assigned by the trial court in its decree and the conclusion reached, under the peculiar circumstances of the case, have not been disputed, and it seems reasonably certain that the manner of disposition of the assets will probably give each creditor more on his debt than could be realized if the assets were sold and a distribution of the proceeds made. We have many times held that to justify a reversal of a decree the error was such as might reasonably appear to have resulted to the prejudice of the appellant, and where no such prejudice appears we will not reverse. That appellant has not been prejudiced by the method of dis-

tribution seems clear as he has not complained of any inequality or unfairness in the allotments made.

As no prejudicial error appears, the decree is affirmed.

BUTLER, J. (on rehearing). Appellant earnestly insists, in his brief on petition for rehearing, that this court overlooked, in the opinion rendered October 26, 1936, the contention made that the case should be reversed for defect of parties. It is insisted that the widow of O. C. Sutton, deceased, Mrs. Florence Sutton, and Miss Elizabeth Sutton, his heir, should have been made parties to this suit by service of process upon them and that no such service was ever had, nor did they make any appearance in the litigation; also, that Mr. Lesser, the surviving partner, died intestate in August, 1935; that the case should have been revived against his heirs at law, and that this was not done. It is suggested that these parties had such an interest in the subject-matter of the litigation as to render any order of the trial court relating thereto void as to them since they had not been made parties to the litigation.

This court did not overlook this question, but the writer of its opinion failed to mention or discuss it because it was deemed unimportant. We now hold this question immaterial.

The record conclusively shows that the partnership was hopelessly insolvent and that the heirs of O. C. Sutton and M. Lesser could not hope to recover anything from the partnership assets which might have been the reason no suggestion of the death of M. Lesser was made or any intervention filed by the heirs.

It is well settled that the heirs and distributees of the property of the deceased member of the partnership have no interest in the property until the affairs of the partnership are terminated and its debts paid. *Lenow v. Fones,* 48 Ark. 557, 4 S. W. 56; *Welch v. McKenzie,* 66 Ark. 251, 50 S. W. 505; *Bonner v. Coburn,* 163 Ark. 274, 260 S. W. 28; *McLerkin v. Schilling,* 192 Ark. 1083, 96 S. W. (2d) 445. On the death of one of the partners the surviving partner holds the partnership assets as trustee

and, as such, is the representative of all parties who have, or may have, any interest in such assets. As the representative of all parties in interest, and subject only to the exercise of good faith and reasonable business judgment, he may deal with the assets as he pleases for the purpose of accomplishing the termination of the affairs of the partnership including the payment of its debts. It is his right, even his duty, to gather in and make available all the assets of the firm for the purpose of satisfying firm creditors, adjusting partnership equities, and to hold the residue, if any, for distribution to those entitled thereto. In the exercise of his duties he may sell partnership lands without consulting those entitled to distribution in the surplus after the partnership affairs are settled. *Hill* v. *Draper,* 54 Ark. 395, 15 S. W. 1025; *Coolidge* v. *Burk,* 69 Ark. 237, 62 S. W. 583; *Cain* v. *Mitchell,* 179 Ark. 556, 17 S. W. (2d) 282.

From a consideration of the principles announced in the cases, *supra,* it follows as a necessary corollary that neither the personal representative nor heirs of the deceased partner are necessary parties to proceedings arising in the courts during the administration of the partnership affairs by the surviving partner. 47 C. J. chapter on Partnership, § 693; *French* v. *Vanatta,* 83 Ark. 306, 104 S. W. 141.

The action against M. Lesser as surviving partner was commenced during his lifetime and his duties before his death were taken over by the chancery court acting through its receiver. Thus, M. Lesser passed out of the litigation. It was, therefore, unnecessary on his death to revive against his personal representative or heirs even though they might have otherwise been proper parties. 1 C. J. chapter Abatement and Revival, § 494, p. 916.

The next contention urged by appellant in his brief on petition for rehearing is that the decree of the trial court should have been reversed for its error in partitioning the real estate belonging to the partnership among the creditors. In our original opinion we held that the trial court erred in decreeing partition in kind, but we refused to reverse on the theory that appellant had not

been prejudiced by the method of distribution. We now reconsider that part of the original opinion having reached the conclusion that we erred in so holding. The decree of the trial court was clearly erroneous and made over the objection of appellant duly preserved in the record. Therefore, the just rule appears to us to be, not that he *was* prejudiced, but that he *might* have been, and that he be required to affirmatively show the prejudice resulting would be to place an unwarranted burden upon him.

The trial court had no jurisdiction to make the order of partition. It is only where lands are held in joint tenancy, in common, or in coparcenary that partition may be had and not then where it appears the partition will result in prejudice to the owner. In that state of case, the proper method is to order a sale of the property with division of the proceeds to those entitled thereto. Section 8091, Crawford & Moses' Digest. This is but a restatement of the common-law rule. 47 C. J. 295, § 73; *London* v. *Overby,* 40 Ark. 155. The judgment in favor of the several creditors did not create any interest in the lands in their favor so that it may be said they held in joint tenancy, in common, or in coparcenary, but created a lien only against the lands for the payment of their several judgments. Therefore, they had no interest which would entitle them to partition. *Roy* v. *Abraham,* 207 Ala. 400, 92 So. 792, 25 A. L. R. 101; *Fullerton* v. *Stortz Bros.,* 190 Ark. 198, 77 S. W. (2d) 966.

The decree of the court below will, therefore, be affirmed in all things except as to that part which makes partition in kind among the creditors. As to that part it is reversed, and the cause remanded with directions to the trial court to order sale of the property and that the proceeds therefrom, less costs, shall be paid to the creditors as their interests may appear.