FRANK SMITH ET AL V. JAS. W. WAYMAN ET AL.

No. A-2103. Decided November 2, 1949.
Rehearing overruled November 30, 1949.
(224 S. W., 2d Series, 211.)

Judgments affirmed. Justices Hart, Smedley, Taylor and Garwood, dissenting.

*Walter B. Morgan,* and *Adams & Morgan,* all of Crockett, for petitioners.

The court of civil appeals erred in holding that the petitioners herein were bound by the proceedings in a suit brought by a creditor of the partnership of Smith Brothers against the trustees of said partnership, but in which the petitioners herein were not named. Also in holding that the court had the power to sell the receivership estate without receiving something to be applied to the debts of the receivership, with over plus, if any, to the receivership debtors. Bruce v. Republic Natl. Bank & Trust Co., 105 S. W. (2d) 882; Jackson v. McIntosh, 12 Fed. (2d) 658 and 273 U. S. 679, 71 L. Ed. 846, 47 Sup. Ct., 93.

*Wayman, Dibrell & Greer,* of Galveston, *Vinson, Elkins, Weems & Francis,* of Houston, and *J. G. Beasley, Jr.,* of Crockett, for respondents.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This case involves the validity and effectiveness of receivership proceedings in connection with the winding up of the affairs of Smith Brothers, a partnership, which was dissolved by the death of one of the two partners. The present controversy is between the devisees of the deceased partner and of his wife and the assignee of the surviving partner, as plaintiffs, and parties claiming title to two tracts of land, part of the firm assets, through a receivers' sale, as defendants. The opinion of the Court of Civil Appeals is reported in 216 S. W. (2d) 837.

On October 25, 1930, J. H. (Jim) Smith and F. A. (Albert) Smith were partners in an extensive business enterprise operating farms, ranches, city properties, city development projects, hotels, office buildings, and many other lines of economic activities. On such date they entered into a written agreement providing for the "management, disposition, control and settlement of all of the affairs of said partnership in case of the death of either of said partners, and in order to relieve the surviving partner of the responsibility and more or less burden of the management of all of the property belonging to said partnership at the time of the death of either of said partners," and making settlement of the outstanding and existing obligations of said partnership. By such instrument the partners did "grant, sell & convey" unto Reagan Houston of Bexar County, Texas, and four others "all of the property of whatsoever kind, including real, personal and mixed, wheresoever

situated, which may be owned, held and controlled by the said partnership of Smith Brothers, at the time of the death of either of said partners." The conveyance was made to Reagan Houston and the four others "as Trustees, for the uses, purposes and with the authority herein stated, with full power and authority to possess, manage, preserve, sell, mortgage and lease any or all of said property, with as little delay as possible after the death of either of said partners, having due regard to the best interests of said Trust Estate, for and upon the following conditions, viz:", and here is set out, first to pay all debts and legal obligations due by the partnership "at the time of the death of either of said partners" and second: After the payment of all debts and obligations to deliver "one-half of the then remaining trust estate" to the surviving partner and one-half to the heirs or legal representatives of the deceased partners." Also "in order to the more rapidly, expeditiously and with as little sacrifice of said Trust Estate as may be possible, to make full, complete and satisfactory settlement of all of the debts and obligations of said partnership, *full power and authority is hereby given to said Trustees to institute and defend all actions which may be necessary or required for the benefit of the Trust Estate vesting in said Trustees full and complete discretionary power* to the end that the trust may be administered to the most beneficial interest of the Trust Estate; with full power and authority to employ all necessary Agents and Attorneys in the execution of said trust; to collect in the property and assets belonging to the Trust Estate hereby created, and in the collection of the assets and obligations which may be due said Trust Estate, said Trustees are given full power and authority to use and exercise their discretion in the settlement and compromise of any claims which may be due *with full power, authority and discretion to so manage, hold, possess and dispose of said Trust Estate as to prevent any undue sacrifice of the trust property,* unless, in the discretion of said Trustees same should be necessary in order to make required payments of any outstanding obligations which might be due or owing by said partnership at the time of the death of either of said partners." (Italics ours.) Provision was made for successor trustee to be appointed by the remaining trustees (and such appointee "who might be satisfactory to the surviving partner") with the same power and authority as original trustees. Further, the instrument provided, "In the administration and execution of the trust herein given and granted it is the intention, purpose and desire of the said F. A. Smith and J. H. Smith that the outstanding and existing legal obligations of the co-partnership of Smith Brothers shall be paid out of the assets of the

Trust Estate with as little delay as may be required in the discretion of said Trustees, but, in the event undue demands should be made by any creditor, which, in the judgment of said Trustees, would result in sacrifice of the assets of the Trust Estate, we hereby give and grant to said Trustees five years from the date of coming into possession of said Trust Estate within which to execute said Trust, and to that end said Trustees may accept said trust under proper orders of the Court having jurisdiction and shall execute and administer said trust in accordance with the orders of said Court, and in conformity with the Will of the deceased partner. In no event, however, shall any bond or bonds be required of said Trustees." This instrument was duly signed, acknowledged by F. A. & J. H. Smith on the day of its execution and filed for record February 5, 1931, in Houston County, Texas (the place of residence of the partners) after the death of J. H. Smith, Dec. 20, 1930.

J. H. Smith made his will on the day the trust agreement was executed, and paragraph 4 thereof is as follows:

"Fourth: In view of the fact that the greater portion of my estate or the property now owned by me consists of my one-half interest in the partnership property of the firm of Smith Brothers, and that all of said partnership property has been conveyed in Trust to five Trustees, designated in a certain written instrument this day executed by F. A. Smith and me as composing said partnership, it is contemplated that my Executrix, hereinafter named will not come into possession of my share of the property of said partnership until after the execution and administration of said Trust, and I direct that paragraph 'Third' above shall not apply and become operative until such time as such Trustees shall deliver said property to my said Executrix."

The paragraph Third above referred to gave his Executrix power to sell his property.

Paragraph Sixth of his will appointed the five trustees named in the partnership instrument as co-executors without bond with his wife, Alice Smith, if in the discretion of said Trustees it should become necessary for them to qualify as such co-executors to preserve that part of his estate coming to or emanating from the co-partnership of Smith Brothers in order to prevent any undue sacrifice of his estate by the demands of his creditors. The trustees never did qualify or act as co-executors of the estate of J. H. Smith.

After the death of J. H. Smith the five trustees named in the instrument took charge of the partnership estate with the acquiescence and consent of the surviving partner, the widow of the deceased partner and his heirs and legal representatives. No complaint has ever been made to such action on the part of the five trustees.

May 6, 1932, W. L. Moody Cotton Company of Galveston, Texas, filed suit No. 6741 in the District Court of Houston County, Texas, against Reagan Houston and the four other trustees only (not making the surviving partner F. A. Smith nor the widow and the heirs, legatees or legal representatives of the deceased partner J. H. Smith parties to the suit). In this suit the plaintiff cotton company alleged the existence of the partnership of Smith Brothers and the execution of the trust instrument which was set out in the petition in full; it alleged the death of J. H. Smith and that the trustees named went into possession of the property immediately thereafter and that the trustees were still in possession of all of the partnership property and described the property. The property were farms, ranches, city lots, business buildings in cities and towns, 500 head of cattle, horses and mules, and sheep, notes, bonds, bank stocks, stocks in business corporations, hotels, bridge companies, coal companies, insurance companies, grocery company, cement manufacturing company, a prominent drygoods house, and other odds and ends. The detailed description of the property in the petition takes up 19 pages in the Statement of Facts filed in this Court. The petition alleges that as of Dec. 31, 1931, the obligations of the partnership amounted to $2,150,611.08 of which $1,192,494.97 was overdue or would mature within 60 days. Also the petition alleged various deeds of trust and mortgages against various properties, delinquent taxes, and further endorsements and guarantees of J. H. Smith & F. A. Smith on various stocks and bonds totaling the sum of $1,980,000.00, and that such obligation is a primary charge against the trust estate. The petition further alleges that secured and unsecured creditors are threatening to sue and to foreclose and that as a result the assets and properties of the trust estate will be sold for inadequate prices and thus dissipated, and that the defendant trustees are unable to arrange the necessary funds to pay taxes, interest, and current expenses. Plaintiff then alleges it is a lien holder to the extent of holding 1661 bales of cotton as security for its debt of $233,889.49 and that when the cotton is sold and proceeds applied it will still be a creditor to the amount of more than $186,000.00 and as such creditor has an equitable lien on the assets of the trust estate, and that

such assets are a trust fund for the payment of all of the creditors of the partnership, including plaintiff. It is alleged that F. A. Smith and the estate of J. H. Smith, deceased, are both and each insolvent; and that the trust estate is insolvent and cannot pay its daily operating expenses or its indebtedness, and also alleges that controversies have arisen and will arise between the creditors and that the appointment of a receiver is necessary in order that the assets of the trust estate may be properly preserved and distributed to the creditors according to their privileges and priorities, and is properly sworn to. Acting upon this petition the district court appointed two receivers who gave bond, and otherwise qualified as required by the court order and who took over the properties of the partnership from the trustees. The trustees took no further action in the matter and did not contest the appointment of the receivers, but the order of appointment sets out it is by agreement of all parties, plaintiff and defendant. About two years later the trustees filed a request in the receivership asking for an extension of time within which to file their claim against the partnership assets for services rendered and the trustees were paid $5000.00 each by the purchaser of the properties from the receiver and as a part of the consideration for such purchase.

In 1936, the receivers filed an application to sell all of the assets on hand to Century Investment Company, a corporation formed by certain creditors of the partnership who had presented their claims to the receivers and such claims had been allowed under proper orders of the court. The purchaser paid in cash a number of claims due by the receivers and the partnership estate in an amount in excess of $146,000.00. The court entered proper orders of sale and the receivers made necessary deeds of conveyance to such properties. The property involved in this suit was among that owned by the partnership and sold. Neither the surviving partner nor the heirs nor legal representatives of the deceased partner were made parties to the sale proceedings. In November 1942 the Century Investment Company conveyed the land involved by proper conveyance to one J. I. Curry who was taking title for himself, and defendants Wayman and Bromberg, 1/3 to each. Curry paid the company no consideration but the defendant Wayman testified the land involved herein was deeded to Curry under the following circumstances: In 1942 it was discovered that Wayman and Leon Bromberg had a 55 acre tract within the inclosure of Mustang Prairie Ranch to which they had no title. Century Investment Company was thought to own such 55 acres although it had no abstract of title to the 55 acres, and did not know whether or

not the company had a good title to such 55 acres. In the course of the negotiations with Century for the 55 acres it developed that the company wanted to dissolve and wind up completely and had several other tracts of land with a doubtful title, including the land involved in the present suit and against which there seemed to be a Federal Land Bank loan of some $12,000 to $14,000. As a result of the negotiations, Wayman and Leon Bromberg purchased the 55 acres, and all the other tracts in which the company had a doubtful title, including land under suit with its Federal Land Bank loan, for the sum of $550 cash. The record shows Wayman and Leon Bromberg would not buy abstract of title to the land nor go to the expense of clearing the title, so they had it deeded to Curry, an abstractor who received a one-third interest in this land for his services in preparing abstracts and correcting titles to all the land purchased by Wayman and Leon Bromberg on this occasion. Additional facts will be stated as we deem necessary for a proper understanding of the case.

■ The first question presented by petitioners is the validity of the trust agreement. The objection urged in this court to the agreement is that it is testamentary in character, under the rules stated in Brown v. Payne, 142 Texas 102, 176 S. W. (2d) 306, and, since it has not been admitted to probate, it has no legal effect. It is true that the agreement shows that it was intended that the trustees should take possession of the property only on the death of one of the partners, and that the property which the trustees should control would be the property owned by the partnership at the time of the partner's death. However, the agreement shows that the partners further intended that the agreement would be a presently binding contract fixing a method for the settlement of partnership affairs upon the death of either partner. Such an agreement was evidently thought by the partners to be mutually beneficial. We see no reason why it should not be legally enforceable. Martin v. Dial, Tex. Com. App., 57 S. W. (2d) 75, 89 A. L. R. 571; Crescent Ins. Co. v. Camp, 64 Texas 521; Altgelt v. Alamo Nat. Bank, 98 Texas 252, 83 S. W. 6; Murphy v. Murphy, 217 Mass 233, 104 N. E. 466, 1.c. 2nd col. 467 (1, 2); In re Eddy's Estate (N. Y.) 26 N. Y. Sup. 2nd 115, 1.c. p.120 (2, 3); Normand v. Normand, 90 N. H. 548, 11 Atl. 2d 816, 1.c. bot. 2nd col. p. 817 (1) and top 1st col. p. 818 (2 & 3); Alexander v. Lewis, 47 Texas 481, 1.c. 485; 50 Yale Law Review (1940-41) p. 202 et seq.; 47 C. J., Partnership, secs. 689, 693, pp. 1085, 1087; 40 Am. Jur., Partnership, sec. 316, p. 351.

No case involving an agreement of this kind has been cited to us and we have found none. However, in other cases it has been held that partners may make binding contracts as to how partnership affairs shall be handled after the death of one of them. Partners may make a binding agreement that the surviving partner may continue the partnership business after the death of one of the partners. Kottwitz v. Alexander's Executors, 34 Texas 689; Lewis v. Alexander's Executors, 34 Texas 608; Alexander's Executors v. Lewis, 47 Texas 481; see 47 C. J., Partnership, sec. 655, p. 1069; 40 Am. Jur., Partnership, sec. 287, p. 327. It has also been held that the partners may validly agree that upon the death of either of them, title to all of the partnership property will vest in the survivor, who shall be indebted to the estate of the deceased partner for an agreed sum. Gaut v. Reed Bros. & Co., 24 Texas 46, 76 Am. Dec. 94. The decisions upholding those agreements support our conclusion that the trust agreement in this case is valid.

■ Petitioners further urge that even if the trust agreement was valid, the receivership proceedings are not binding on petitioners because only the trustees were made defendants to that suit and neither petitioners nor their predecessors in title were made parties. Respondents answer that the trust agreement conferred on the trustees the power to bring and defend suits, and therefore the trustees represented the estate of the deceased partner and the surviving partner in the receivership proceedings.

The instrument signed by the Smith Brothers is in the nature of an assignment for the benefit of the partnership creditors. The creditors of the partnership are the primary beneficiaries under the instrument and if there is anything left after debts of the firm have been paid such residue would go to the surviving partner and the heirs and legal representatives of the deceased partner. The estate of the deceased partner has no title to the specific property of the firm, but only in that which remains after the payment of the debts of the firm. Altgelt v. Alamo Nat. Bank, 98 Texas 252, 83 S. W. 6, 1.c. p. 11 near bottom of 1st col.; Donnell v. Talley, 104 S. W. (2d) 920, 1.c. (11, 12) 2nd col. p. 924; McLean v. Hargrove, 139 Texas 236, 162 S. W. (2d) 954, 1.c. (4) p. 957; 32 Tex. Jur. 529, Partnership, sec. 201, note 12.

■ Upon the death of one partner the surviving partner becomes vested with the right to absolute and complete possession of all of the firm's assets, including real estate, together with

the right to sell and dispose of the same for the purpose of paying the firm's debts. Martin v. Dial, 57 S. W. (2d) 75, 1.c. (4, 5) 1st col. p. 81, 89 A. L. R. 571; 32 Tex. Jur. p. 507 et seq., Partnership, sec. 184 and p. 509, sec. 186.

The agreement between the Smith Brothers as to the conduct of the partnership upon the death of one partner being a valid and binding agreement is binding upon the surviving partner and the heirs and legal representatives and the widow of the deceased partner. Alexander v. Lewis, supra, and the other authorities cited in our discussion of the validity of this agreement.

The surviving partner may make a valid assignment for the benefit of creditors, and such survivor is not a necessary party in a suit against the assignee. Levy's Estate v. Archenhold et al., 44 S. W. 46, no writ action. 47 C. J. p. 1048, Partnership, sec. 618, note 21; Lyons-Thomas Hdw. Co. v. Perry Stove Mfg. Co., 88 Texas 468, 484, 27 S. W. 100, 1.c. 108 middle 1st col. The first case also holds that the surviving partner may assign his right to have firm's assets subjected to firm's debts to another and such other will possess all rights and prerogatives of the surviving partner. If the heirs or legal representatives are not satisfied with the way the surviving partner is administering his trust they may go into a court of equity for their relief. Martin v. Dial, 57 S. W. (2d) 75, 1.c. (9, 10) 1st col. p. 82, 89 A. L. R. 571.

The surviving partner having signed and acknowledged this instrument, and it not being changed or revoked at the time of the death of J. H. Smith, is bound by its terms. All the evidence points to the fact that the surviving partner after the death of J. H. Smith, turned over the firm's assets to the trustees and acquiesced in their handling of the affairs of the firm.

In the suit for receivership the trustees were made parties defendant and participated in the case, and delivered the assets to the receivers and asked for an extension of time in which to file their claims against the receivership estate. We believe that the surviving partner and the heirs and legal representatives of the deceased partner were concluded by the judgment rendered. The written instrument appointing the trustees gave them power to sue and to defend suits.

■ J. H. Smith in his will reaffirms the rights of the trustees in the quoted part thereof above set out, and again sets forth that

these trustees have full discretion in their handling of the firm's assets and business.

This Court in the case of Slay v. Burnett Trust, 143 Texas 621, 630, 187 S. W. (2d) 377, 1.c. bot. 2nd col. p. 382, has held:

"It is further held that the beneficiary is not a necessary party when the intention to authorize the trustee to prosecute suits in his own name is reasonably manifested by the terms of the trust instrument. Anderson v. Stockdale, 62 Texas 54; Ebell v. Bursinger, 70 Texas 120, 8 S. W. 77; Bingham v. Graham, Tex. Civ. App., 220 S. W. 105, 110. It is said that 'In such cases, the trustee is in court for and in behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party.' Kerrison v. Stewart, 93 U. S., 155, 160, 23 L. Ed. 843, 845."

The trust instrument in the Slay case did not specifically grant power to the trustees to bring and defend suits, but it was held sufficient to give such power to the trustees and that the beneficiaries were not necessary parties. Since the present instrument specifically gives the trustees the right to sue and defend we do not see how there can be any doubt as to the judgment appointing a receiver being binding upon the surviving partner and the heirs and legal representatives of the deceased partner. "To the general rule that in litigation involving a trust estate both the trustee and the beneficiaries should be made parties, *there are a number of exceptions, as where, by the terms of the trust, the power to litigate concerning it is expressly conferred upon the trustee,* and further where from the nature and extent of the authority given, that power will be presumed to have been intended." (Emphasis ours.) Ogden v. Syphrett, 236 S. W. 143, 1.c. top 1st col. p. 145, writ dismissed W.O.J.

■ To the general rule that the beneficiaries must be made parties in suits concerning the trust property, there are a number of exceptions and one well-recognized exception is where there is an express provision authorizing and empowering the trustees to maintain and defend suits covering the trust property.

"By way of exception from the above stated general rule that beneficiaries are necessary parties to actions relating to trust property, the following propositions appear to be established by the decisions:

"1. As already mentioned (sec. 97), a trustee under an express trust can maintain and defend suits affecting trust property, without joinder of the beneficiaries, where the trust instrument confers such power upon him or where such intent is reasonably manifested by the circumstances and terms of the trust." 42 T. J. p. 779, Trusts, sec. 158. See also Lyons-Thomas Hdw. Co. v. Perry Stove Mfg. Co., 88 Texas 468, 27 S. W. 100 1.c. 108 1st col.; Ebell v. Bursinger, 70 Texas 120, 122, 8 S. W. 77 1.c. bot. 77, top 78; Cavers v. Sioux Oil Ref. Co., 39 S. W. (2d) 866(4).

Another exception set out in 42 Tex. Jur. p. 780, Trusts, sec. 158, is:

"2. Where the beneficiaries are so numerous that it is inconvenient to make them parties, an intent to confer on the trustee power to sue or defend without joinder of the beneficiaries will be presumed."

■ The pleadings in the receivership show that the partnership owed more than $2,000,000.00 of which the greater part was past due or would mature within 60 days. Also, the record shows that there were more than 1500 papers and instruments filed in the Receivership Cause, so we feel that with an enterprise of the vastness and extent the record shows Smith Brothers to have been, there must have been a large number of creditors of the firm. In addition, each and every one of the holders of the stocks and bonds which the Smith Brothers had endorsed and guaranteed payment were also beneficiaries under the trust instrument. If the surviving partner and the widow, the heirs and legal representatives of the deceased partner were necessary parties to the receivership, so would be each and every creditor. In fact, the creditors were the primary beneficiaries. The whole language and import of the instrument shows that the creditors must first be paid before the partners or their representatives have any rights at all in the property. The law governing partnership property has been settled so long no citation of authority is necessary to sustain the proposition that firm creditors have first claim to partnership assets and that partners or their representatives have no rights until firm debts are paid. Such a proposition is fundamental and elemental.

■ The suit of W. L. Moody & Company recited the existence of the trust and that Wirt Davis et al were acting as trustees under the written trust instrument. The petition further alleged the insolvency of the trust, the partnership, and of the surviving partner and the estate of the deceased partner; that the

income of the estate was insufficient to pay the taxes and operating expenses; that certain creditors were threatened to foreclose their preference liens and thus deprive the estate of a chance to work out of its difficulties; and that the trustees were helpless to go further, and asked that a receiver be appointed to take over the trust property and apply it to the pro rata payment of the creditors. Thus the suit is a desire to carry out the purposes of the trust by receivers who would have certain court protection, rather than by the trustees who were helpless. The order appointing the receiver was entered in 1932. The order to sell the property was not entered until 1936. The record shows that Mrs. J. H. Smith (the surviving widow of the deceased partner) loaned money to both the original trustees and to the receivers and that the court in which the receivership was pending issued Receivers Certificates to her which were a prior lien on certain properties of the partnership. She accepted such certificates and she executed a release of all her claims and specifically to the approximately 229 acres involved in this case in favor of the Century Investment Company, the purchaser from the receivers appointed by the court. The consideration for such release is recited to be approximately $104,000.00. The record further shows that at the time of the sale of the properties to Century Investment Company by the receivers in 1936, and under proper court orders, one of the considerations for the sale was the payment by Century to Mrs. Smith of approximately $104,000.00 then due as the unpaid balance on the original loans. These facts in our opinion forever seal the lips of Mrs. Smith or her heirs to complain of the receivership or of her failure to be made a party. As far as this record shows, up to her death in 1943, she never registered a complaint as to the appointment of the receivers or of their handling of the estate. The record further fails to show any complaint or court action by the surviving partner F. A. Smith. In the same transaction where Century purchased the property from the receivers a part of the consideration was stated to be the payment of back wages due an employee of the receivers and who is now one of the plaintiffs herein, towit, Mary Frank Smith.

This Court judicially knows that the period of time from 1932 to 1936 was one of the worst depressions the State of Texas ever experienced, and that property values—particularly real estate—reached a very low ebb and that owning real estate was more of a liability than an asset during this period. These plaintiffs— and those under whom they claim—sat idly by and permitted the receivers to handle the property during four years of the worst depression known to Texas—and never made a com-

plaint. Neither did they go into a court and seek to set aside such appointment. We do not believe that the law permits the plaintiffs to come into court at this late date and under the changed conditions, and attack the title of those purchasing the extensive properties of this partnership under and by virtue of proper orders of the court appointing the receivers.

While we have found no case in Texas exactly in point on both the facts and the law we find an excellent discussion of the legal principles controlling the necessity of making beneficiaries under trust agreements parties in the case of Bingham v. Graham, (TCA) 220 S. W. 105, 1.c. & headnotes (4 thru 10) pp. 109- 113, no writ action shown, and quoted by this Court in the Slay case above. See also Davis v. Hudgins (TCA) 225 S. W. 73, 1.c. pp. 76-77, no writ action shown. See also Schuster v. Crawford (TCA), 199 S. W. 327, 1.c. 328(1), writ dismissed.

■ We think the reasoning of the Supreme Court of Arkansas in the case of Sutton v. McClain, 193 Ark. 49, 99 S. W. (2d) 236, that the widow and heirs of a deceased partner were not necessary parties in suit to appoint a receiver to take partnership assets from the surviving partner, is in point and applicable to our case. On rehearing the claimed defect of parties is discussed and it is held the widow and heirs were not necessary parties in such proceeding.

■ On submission our attention was called to that part of the record showing that at a date subsequent to the receivers' sale, firm creditors of Smith Brothers have recovered judgments against F. A. Smith individually for firm debts. It has long been recognized that in Texas the liability of partners for firm obligations was both joint and several. Burton v. Roff, 292 S. W. 159, opinion by Judge Speer of the Commission of Appeals. Therefore the firm creditors were well within their rights in securing such judgments. If this evidence goes to show anything of value to us in this cause, it would show that the partnership was insolvent and therefore there was never any property in which the plaintiffs herein and their predecessors in title could take an interest.

■ We hold that the appointment of the receivers was valid and therefore a good title passed to the purchasers of this property by the receivership sale under proper orders of the court which appointed the receiver.

■ The petitioners assign as error and as additional reason why the judgment of the two lower courts should be reversed

the point that the trust instrument contained a provision providing that the trustees should have "five years from the date of coming into possession of said trust estate within which to execute said trust." The very next clause also sets out that the "trustees may accept the trust under proper orders of the court having jurisdiction and shall execute and administer said trust in accordance with the orders of said court" etc. The receiver was appointed by the court in 1932, which was well within the five-year period. Also, we do not believe that the limitation as to time in the trust instrument could control a court which took jurisdiction of the Trust Estate. Such estate thereafter must be administered under the discretion and control of such court so as best to carry into effect the purposes of the trust.

■ Complaint is also made of the sale of the trust property by the receivers under orders of the court, because it is claimed a sufficient consideration was not paid therefor. It is claimed that the court should have required something to be applied first to the debts in receivership, so balances might be acertained, and surplus, if any, to be delivered to the receivership debtors. Since we held that the appointment of the receivers was a valid and binding judgment, it follows that this suit is a collateral attack, not only on such appointment, but also on the proceedings taken in such suit and leading to the sale of the assets by the receivers. Smith v. Olson, 23 Texas Civ. App. 458, 56 S. W. 568, writ denied. Unless same were void, this suit cannot prevail. These orders were made by a court having jurisdiction of the cause, and with plenary powers to appoint the receivers and to order and confirm sale by such receivers. This was all done in the case at bar, and same cannot be attacked on the grounds urged. 45 Am. Jur. p. 306 sec. 391; 36 Tex. Jur. p. 126 sec. 58, sec. 59 p. 128 et seq., sec. 110 p. 221; Love v. Allard (TCA) 286 S. W. 581, writ refused; Texas Steel Co. v. Huey-Philip Hdw. Co. (TCA) 110 S. W. (2d) 964.

"It is well settled that inadequacy of price in an execution or receiver's sale is not, in the absence of facts or circumstances showing fraud or irregularity, sufficient ground for setting aside the sale." Morrow v. DeVitt (TCA) 160 S. W. (2d) 977, writ ref. W. of M.

In this case are cited many cases by the Texas Supreme Court sustaining the rule.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 2, 1949.

MR. JUSTICE HART, joined by Justices Smedley, Taylor and Garwood, dissenting.

It is a fundamental general principle of our jurisprudence that all persons are entitled to their day in court and that judgments are not binding against persons who are not parties to the suit in which the judgment is rendered. See Kirby Lumber Corp. v. Southern Lumber Co., 145 Texas 151, 154, 196 S. W. (2d) 387, 389, 169 A. L. R. 174, 177; Shaw v. Cunningham, Tex. Civ. App., 42 S. W. (2d) 685, writ refused; 30 Am. Jur., Judgments, sec. 220, p. 951; 50 C. J. S., Judgments, sec. 762, p. 288. Neither the petitioners nor any of their predecessors in title were parties to the receivership proceedings against the trustees of the Smith Brothers' estate. The majority holds that the petitioners are nevertheless bound by these proceedings. I respectfully dissent from this holding.

Primarily the holding of the majority is based on the ground that the effect of the trust agreement executed by the partners is to authorize the trustees to represent the surviving partner and the devisees and widow of the deceased partner in the receivership suit, even though only the trustees were named as parties. In so holding, the majority relies upon the provisions of the trust agreement authorizing the trustees to institute and defend suits, which read as follows:

"* * * In order to the more rapidly, expeditiously and with as little sacrifice of said Trust Estate as may be possible, to make full, complete and satisfactory settlement of all of the debts and obligations of said partnership, full power and authority is hereby given to said Trustees to institute and defend all actions which may be necessary or required for the benefit of the Trust Estate; vesting in said Trustees full and complete discretionary power to the end that the trust may be administered to the most beneficial interest of the Trust Estate; * * *."

It seems evident to me that these provisions were not intended to apply to a suit against the trustees which had as its purpose the complete termination of the trust and the substitution of an entirely different method of winding up the partnership affairs. The authority granted by the trust agreement is limited to cases in which the trustees, in whom special confidence is placed, act for the benefit of the trust estate, it being contemplated that the trustees in prosecuting or defending suits shall continue to act as such and to exercise their discretion as to the

settlement of claims against the estate and the disposition of any surplus which may remain, with full responsibility to account for their actions. The purpose of the receivership suit was to completely divest the trustees of their title, powers, and responsibility. I do not think that it can fairly be said that the partners in executing the trust agreement contemplated that the trustees could represent the beneficiaries in such a suit.

It is clear that the surviving partner and the devisees and the widow of the deceased partner were beneficiaries under the trust agreement. The creditors of the partnership are also beneficiaries, to the extent of their valid claims against the partnership. The trustees were expressly charged with the duty to pay the claims of the creditors first and to pay over any balance to the surviving partner and the estate of the deceased partner. The surviving partner and the devisees and the widow of the deceased partner were entitled to compel the trustees to dispose of the assets of the partnership in the most advantageous way, in order that there might be a surplus for distribution to them after the payment of the debts; or, if the partnership assets were not sufficient to pay the debts, then they were entitled to have have the debts reduced as much as possible through the application of the partnership assets in order to minimize the individual liability of the surviving partner and the deceased partner's estate. To a certain extent the interests of the creditors on the one hand and the surviving partner and the devisees and the widow of the deceased partner on the other hand were inconsistent. The creditors were interested in having the debts paid but they were not interested in whether any surplus was left, and it would be obviously to their advantage if they were able to acquire the assets of the partnership estate without having to account for their value or to release any of the parnership liabilities. On the other hand, the surviving partner and the devisees and the widow of the deceased partner were interested in having the assets of the partnership applied to the extent of their maximum value to the discharge of partnership obligations, so that as much as possible of the partnership liabilities would be discharged and if possible a surplus would be left over for distribution.

The situation in this case, therefore, is one where there are two classes of beneficiaries under the trust agreement whose interests in important respects are inconsistent and conflicting. In the receivership proceedings, the suit was brought by a member of one of the classes of beneficiaries, a creditor of the partnership, against the trustees, without any member of the other

class of beneficiaries being made a party to the suit. The purpose of the suit was to terminate the trust, to prohibit the trustees from thereafter exercising any of their powers under the trust agreement, and to substitute for the method contemplated by the trust agreement an entirely different method of winding up the partnership affairs. In this situation I am strongly convinced that the trustees had no authority to represent any of the class of beneficiaries who were not named as parties and that the proceedings in the receivership suit are not binding on those beneficiaries.

The general rule has been stated as follows in 50 C. J. S., Judgments, sec. 778, p. 311:

"The general rule is that, in all proceedings affecting the trust estate, whether brought by or against third persons, the trustee and cestui que trust are so far independent of each other that the latter must be made a party to the suit in order to be bound by the judgment or decree rendered therein."

The decisions by the Texas cases have not always been consistent, but I believe that their effect, as applied to this case, is that the beneficiaries of a trust must be made parties to a suit affecting the trust property, where the purpose of the suit is to terminate the trust. I believe that a review of the Texas cases on this question will show that this is true.

In Hall v. Harris, 11 Texas 300, 303, this court quoted with approval from Story on Equity as follows: "The general rule in cases of this sort is, that in suits respecting the trust property, brought either by or against the trustees, the *cestui que trust,* or beneficiaries, as well as the trustees also, are necessary paries."

In Ebell v. Bursinger, 70 Texas 120, 122, 8 S. W. 77, it was held that the beneficiary was a necessary party in a suit to cancel a trust deed. The court says that "the general rule is well established that in suits by or against the trustees for the recovery of the trust property the beneficiary is a necessary party," and that the exceptions to this rule "embrace mainly that class of cases where by reason of the number of the beneficiaries it is inconvenient to make them parties, and where it may be presumed that it was the intention to invest the trustees with power to prosecute and defend suits in their own names." One of the illustrations given by the court for the exception referred to is "the case of an assignee in a deed of an assignment made by an insolvent for the benefit of his creditors," citing Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843. In the

latter case, it was held that a creditor, who had declined to be a beneficiary under the trust deed, could sue to set aside the trust deed, where he joined the debtors, the trustee, and representative beneficiaries as defendants, without the necessity of bringing in as parties all of the creditors who were beneficiaries under the trust deed. It was not shown in that case that there was any conflict of interests between the trustee and the beneficiaries or between the beneficiaries as against each other.

In Hudson v. C. Eisenmayer Milling & Elevator Co., 79 Texas 401, 15 S. W. 385, a suit was brought by some of the creditors of a partnership against the partners and the trustee to have the court declare that a trust deed was for the equal benefit of all of the creditors, thereby in effect setting aside provisions contained in the deed for the preference of some of the creditors. It was held by the court that the beneficiaries were necessary parties. In Preston v. Carter Bros. & Co., 80 Texas 388, 16 S. W. 17, it was held, without citing the Hudson case, supra, that in a suit by a creditor to set aside a trust deed for the benefit of other named creditors, the trustee alone could be sued and the beneficiaries under the deed were not necessary parties.

In Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 88 Texas 468, 27 S. W. 100, it was recognized that the Hudson and Preston cases were at least partially in conflict, and the court explicitly overruled the decision in the Preston case so far as the conflict existed, saying (88 Texas at 484, 27 S. W. at 108): "In Hudson v. C. Eisenmayer Milling and Elevator Company, 79 Texas, 401, it was sought to have an instrument claimed by the trustee and beneficiaries named in it to be a mortgage, declared to be a general assignment, and to annual the preference therein provided for. Plaintiff sought to enforce this instrument as reformed, and claimed under it an interest in the fund antagnostic to the named creditors. It was held, that the creditors named in the instrument were necessary parties to the suit. We adhere to this as a correct practice in that class of case, and in so far as Preston v. Carter Bros., 80 Texas, 388, 165 S. W. 17, is in conflict with the doctrine announced in Hudson v. C. Eisenmayer Milling and Elevator Company upon this point, the former case is overruled."

In the Lyons-Thomas case, supra, the suit was brought by some creditors of an insolvent corporation against the corporation, its officers and stockholders, the trustee, and certain creditor beneficiaries under a deed of trust, to set aside this and other deeds of trust and to have a receiver appointed for

the corporation property. The beneficiaries under one of the deeds of trust were not made parties, and the question of their nonjoinder was raised by the parties who were made defendants, the point being raised "that all of the beneficiaries in the deeds of trust were necessary parties to this suit." (88 Texas at 482, 27 S. W. at 107.) The court held that the execution of the trust deeds by the insolvent corporation was "a violation of the trust which the law raised upon its insolvency" (88 Texas at 483, 27 S. W. at 107) and that, "The beneficiaries named in the deed of trust which attempted unlawfully to create a trust in a trust fund, were not necessary parties to this suit, which was prosecuted for the purpose of restoring the fund to its lawful purposes." (88 Texas at 485, 27 S. W. at 108.) Just preceding this statement, the court had stated that before a distribution of the fund was made, notice should be given to each of the beneficiaries of the trust fund, so "that each may present his claim before the court for inquiry and adjudication." (88 Texas at 485, 27 S. W. at 107.)

The Lyons-Thomas case is readily distinguishable from the present case, because the court there was dealing with a trust deed which was held to be unlawful and further because the contentions of those claiming under the trust deeds could be amply presented not only by the trustee but also by some of the beneficiaries claiming under one of the deeds under attack. There was no indication of any conflict of interests between those beneficiaries who appeared in the case and those who were not made parties.

In Cavers v. Sioux Oil & Refining Co., Tex. Com. App., 39 S. W. (2d) 862, suit was brought by a creditor against the debtor corporation and the trustee to declare invalid a trust deed executed for the benefit of certain other creditors. It affirmatively appears from the opinion that while the creditor beneficiaries were not made parties to this suit, they actually knew of the suit, consulted with the trustee about it, gave the trustee money to use for expenses in defending the suit, authorized the employment by the trustee of the same attorneys who were representing the beneficiaries in a related suit, and otherwise co-operated with the trustee in the defense of the suit. (39 S. W. (2d) at 863-865.) There was therefore ample evidence to sustain the conclusion that after the suit was filed the beneficiaries in fact agreed that the trustee should represent their interests in the suit.

In the Cavers case the court quotes from the opinion in

Galveston, H. & S. A. Ry. Co. v. Butler, 56 Texas 506, where the court had previously quoted from Pomeroy on Remedies to the effect that the beneficiaries are not necessary parties where a third party brings a suit to nullify or set aside the trust deed, for the reason that "the trustees themselves are sufficient to represent and defend all the interests of those who claim under the trust." The statement made by Pomeroy was not necessary to the decision in the case where it was originally quoted, because there it was held that the evidence showed that no persons were omitted as parties who had any beneficial interest. (See 56 Texas 512.) As we have seen, the statement was not necessary in the Cavers case, supra, because there the evidence showed that the beneficiaries knowingly consented to the trustee's representing their interest in that suit. A similar statement, citing the Butler case, supra, also appears in the opinion in Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 88 Texas 468, 484, 27 S. W. 100, 107, but in that case also the statement was unnecessary because the court's conclusion was amply supported by other reasons we have mentioned above.

In more recent cases this court has expressly rejected the proposition that the fact that the object of the suit is to terminate the trust is a reason for not requiring that the beneciaries be made paries. On the contrary, the court has said specifically that in this class of cases the beneficiaries must be made parties. In Republic Nat. Bank & Trust Co. v. Bruce, 130 Texas 136, 141, 105 S. W. (2d) 882, 885, this court said: "Obviously the beneficiaries are necessary parties to any proceeding, the object or effect of which is to end the trust or materially alter its terms." Cavers v. Sioux Oil & Refining Co., supra, is cited as authority for this statement.

Likewise, in Slay v. Burnett Trust, 143 Texas 621, 631, 187 S. W. (2d) 377, 383, the court, in holding that under the facts of that case the beneficiary was not a necessary party, gives as its reasons not only that the record shows that the beneficiary knew of and acquiesced in the action by the trustee but also that: "The suit is not to wind up or settle the trust, but it is to collect profits and obligations alleged to belong to it, so that they may be held and used for the purposes intended by the settlor."

On principle, it would certainly seem that, if any distinction is to be made, it would be more important to the beneficiary to have his day in court if the object of the suit is to destroy the trust and his interests in it rather than to carry out or interpret its provisions. What was regarded as the sound rule

for determining whether the trustee could represent the beneficiaries was stated by this court in Slay v. Burnett Trust, supra, as follows (143 Texas at 630, 187 S. W. (2d) at 382): "An eminent authority expresses the conclusion that, while the early equitable rule was that the beneficiary was always a necessary party in actions relating to the trust, the present position of the courts is that the trustee may represent the cestui que trust in all such actions where there is no conflict of interest between the cestui que trust and the trustee or between the several cestuis que trust. Bogert's Trusts and Trusees, vol. 3, pp. 1872-1878, sec. 593. Many authorities are cited in support of the text, among them being Cavers v. Sioux Oil & Refining Co., Tex. Com. App., 39 S. W. (2d) 862." The text of the latest edition of the authority cited by the court states the rule in the following language (3 Bogert, Trusts and Trustees, 1946 ed., sec. 593, p. 61): "The most difficult questions arise with respect to the power of the trustee to represent the cestui que trust in actions. If suit is brought by or against the trustee, is the cestui que trust a necessary party? The earlier equity rule was that the beneficiary was always a necessary party, but the present position of the courts is that the trustee may represent the cestui que trust in all actions relating to the trust, if righs of the cestui que trust as against the trustee, or the rights of the cestuis que trust as between themselves, are not brought into question."

In Lower Colorado River Authority v. Chemical Bank & Trust Co., Tex. Civ. App., 185 S. W. (2d) 461, 465, where numerous bondholders were beneficiaries, it was held that they were not necessary parties in a suit to construe the trust instrument, but it was recognized that the case was exceptional and the law as to the necessity of joining the beneficiaries of a trust was stated as follows: "It is a well-settled rule that in general the beneficiaries of a trust are proper, and usually necessary, parties to suits relating to the trust estate. This is particularly true as to specifically named beneficiaries. See 42 Texas Jur., Sec. 157, p. 778, and cases cited; 65 C. J., sec. 759, p. 869; Powell v. Parks, 126 Texas 338, 86 S. W. (2d) 725. Or where the purpose of the suit is to modify, alter or end the trust. Republic National Bank & Trust Co. v. Bruce, 130 Texas 136, 105 S. W. (2d) 882." The Court of Civil Appeals' judgment in this case was affirmed by this court, Lower Colorado River Authority v. Chemical Bank & Trust Co., 144 Texas 326, 190 S. W. (2d) 48, without discussion of this point, except the statement that this court had concluded that the Court of Civil Appeals had reached the correct conclusion. (See 144 Texas at 334, 190 S. W. (2d) at 52.)

In Whitsett v. Whitsett, Tex. Civ. App., 201 S. W. (2d) 114, writ refused, n. r. e., the court held that the beneficiaries were necessary parties to a suit to cancel a trust instrument, the Court pointing out that the beneficiaries were not numerous and were named in the trust instrument. In Johnson v. Stinson, Tex. Civ. App., 215 S. W. (2d) 218, writ refused, n. r. e., the same conclusion was reached in a similar suit, the court emphasizing the existence of the possibility of conflict of interests between the beneficiaries.

I do not think the other cases cited in the majority opinion are inconsistent with the cases I have discussed above. Ogden v. Syphrett, Tex. Civ. App., 236 S. W. 143, writ dismissed, was simply a suit brought by a creditor against a trustee to establish a claim against the partnership. Schuster v. Crawford, Texas Civ. App., 199 S. W. 327, writ dismissed, was a suit brought by the trustee to recover the trust property. Davis v. Hudgins, Texas Civ. App., 225 S. W. 73, was a suit in which it was held that some of the members of a class of befienciaries could be sued as representatives of the class, there being no showing of inconsistent interests.

In Levy's Estate v. Archenhold, Texas Civ. App., 44 S. W. 46, it was held that a partnership creditor could pursue his claim against the administrator of the deceased partner's estate, where the surviving partner had turned over the partnership property to the administrator for this purpose, and that it was not necessary that the surviving partner be made a party to the administration proceedings, where it affirmatively appeared that all of the steps taken by the creditor were with the consent of the surviving partner.

In Sutton v. McClain, 193 Ark. 49, 99 S. W. (2d) 236, it was held that the surviving partner was the only necessary party to a suit to appoint a receiver for the partnership affairs. Assuming that this case was properly decided, it would be analogous here only if the fact were that the surving partner was named as a defendant in the receivership proceedings. He was not so named, and nothing in the record shows that he took any part in the receivership suit. We need not decide whether the judgment would have been binding on the other beneficiaries if he had been made a party. The surviving partner has interests in common with the heirs or devisees of the deceased partner which make it proper for him to represent the partnership estate in suits, which interests the trustees did not possess in this case. The trial court found that the trustees surrendered their trust

without contest and wholly ceased to function as trustees. His own self-interest would certainly have impelled the surviving partner to see that, if receivers were appointed, they would properly handle the assets and make a full accounting.

The reasons supporting the general rule requiring the joinder of the beneficiaries of a trust as parties in a suit involving the trust property are particularly applicable to the receivership proceedings involved in this case. I have already attempted to point out the conflict of interests between the creditors on the one hand and the surviving partner and the devisees and widow of the deceased partner on the other. None of the members of the class of beneficiaries to which the petitioners belong was named as a party in this suit; so there is no question of representation of a class by one or more members of the class. Furthermore, the practical difficulty which exists in some cases of making numerous beneficiaries parties to the suit does not exist here. The surviving partner was named in the trust instrument and there is nothing to show that there would have been any difficulty in making him or the devisees and the widow of the deceased partner parties to the suit.

The opinion of the majority takes the position that if it were necessary to make the surviving partner and the devisees and widow of the deceased partner parties to the receivership suit, then it would also be necessary to make all of the creditors parties. This question, of course, is not before us in this case. The record shows that the receivership suit was brought by one of the creditors and that many, if not all, of the creditors appeared in the suit and filed their written consent to the action of the receivers. If any creditors were not actually notified of the proceedings and had no opportunity to present their claims, then the question would be presented as to whether such creditors were represented by those creditors who actually appeared in the case, and, if not, whether limitations or some other defense would bar their claims. This would present an entirely different question from the one in the case now before us, and I see no reason why we should allow any considerations which would apply to that case to influence us in the decision of this case.

This case illustrates the dangers which may exist where some of the beneficiaries of a trust are not made parties to a suit whose object is to terminate the trust. The district court made express findings in this case that the trustees surrendered the assets of the partnership to the receivers by an agreed judgment and that "in so doing the only authority they had came

from the Trust Agreement and the Judgment" in the receivership suit. The court further found that "the Trustees in the Trust Agreement ceased to function as such after the decree of the Third Judicial District Court appointed Receivers." The sale by the receivers was to Century Investment Company, which in effect was simply an alter ego for the creditors whose claim had been allowed, since they owned all of its stock in proportion to their claims. The consideration for the transfer of all of the partnership assets to Century Investment Company was its agreement to pay certain specified claims against the receivers and to pay the remaining debts, which constituted the great bulk of the partnership liabilities, "out of the assets to be conveyed and transferred." No requirement was made that Century Investment Company render any account of the disposition of the assets or the amount of debts paid.

The net effect of the receivership proceedings and the subsequent conveyances has been that the partnership estate has been deprived of all of its assets, without any accounting being made by the trustees, the receivers, or the Century Investment Company as to the proceeds which have been received from the sale of the bulk of the assets or the amount of the debts which have been discharged thereby. As the majority opinion points out, the partnership owned extensive assets. By far the greater part of these assets have passed into the hands of the creditors who took part in the receivership proceedings, through their ownership of Century Investment Company, but so far as the record shows no accounting has been made as to how these assets have been disposed of or what part of the proceeds, if any, has been used to discharge partnership debts. The record affirmatively shows that creditors of the partnership have sued the surviving partner, without allowing any credit for the partneership assets which were transferred by the receivers to Century Investment Company. Of course, as the majority opinion points out, the partners were individually liable for the partneership debts to the extent that they were not paid out of the proceeds of the partnership assets, but the relevant fact so far as this case is concerned is that in the suits brought against the surviving partner it appears that no part of these partnership debts has been paid out of the assets transferred to Century Investment Company. If the surviving partner and the devisees and representative of the deceased partner had been made parties to the receivership proceedings, they would at least have had the opportunity to contest the appointment of receivers, to demand that the partnership assets be disposed of to their maximum advantage and protection, and to require the receivers to make a full accounting showing how the assets were disposed of.

The majority opinion refers to the allegations contained in the petition in the receivership suit to the effect that the partnership was insolvent and that the appointment of receivers was necessary to protect the estate. These allegations may or may not have been true. The trustees made no defense to the suit and the present petitioners as beneficiaries were given no opportunity to make any defense. I do not think that we would be justified in assuming, in the disposition of this case, that the ex part allegations in the receivership proceedings correctly and fully reflect the facts, as against persons who were not parties to the suit and had no opportunity to contest the allegations. Even if the partnership estate was insolvent, still the partners would have been enitled to a diligent administration of the estate so that the full value of the assets could be realized and the liabilities reduced to the maximum extent. In any event, a person who is not given an opportunity to defend a suit should not be held to be bound by a judgment rendered therein simply because the plaintiff's petition in the suit may allege a cause of action.

The majority opinion takes judicial notice of economic conditions existing at the time of the pendency of the receivership proceedings. I respectfully submit that such considerations are not legally relevant to a decision of this case. Certainly no one would contend that one rule of law should apply to a period of depression and a different rule to a period of prosperity. If the petitioners were entitled to their day in court, they should be protected in this right regardless of the economic situation in the country.

As an alternative ground for its holding, the majority opinion says that the petitioners are bound by the judgment in the receivership proceedings by reason of their acquiescence or failure to take action at an earlier date. I respectfully submit, however, that this ground for the decision is not supported by this record. The defendants in the trial court filed no pleadings raising the issues of waiver, estoppel, or laches, as they were required to do under Rule 94, Texas Rules of Civil Procedure. The district court made full findings of fact and conclusions of law, but there is nothing in any of these findings or conclusions to indicate that the trial court based its judgment upon any finding of acquiescence, waiver, estoppel, laches, or any similar defense. In fact, the contrary is indicated by the court's finding that "the trustees surrendered the assets of Smith Brothers (The Trustees named in the Trust Agreement) to the Receivers by an agreed judgment of the Third Judicial District Court of Texas in and for Houston County, Texas, and

344

in so doing *the only authority they had* came from the Trust Agreement and the Judgment of the Third Judicial Court the last above mentioned." (Emphasis added.)

As to the widow of J. H. Smith, the record contains a release executed by her of certain deed of trust liens to secure a loan which she originally made to the trustees and which later was increased and extended by the receivers and finally paid by them. The release is not a general one, but simply a release of the liens securing the indebtedness mentioned. The facts in connection with the making of the loan and its payment are not shown by the record, and it seems to me that those who claim under Mrs. Smith should not be held to be estopped simply because Mrs. Smith loaned money to the receivers and permitted them to pay her what they owed. Moreover, Mrs. Smith acquired no interest in the partnership estate from her husband, who devised all of his interest to his children, and the only interest her children could claim through her would be her share, if any, in the partnership property as the community property of herself and her husband. As to her husband's share, or to the extent it may have been his separate property, the children would certainly not be bound by her acts.

The only other evidence showing any connection by any of the petitioners with the receivership proceedings is a recitation in a report of the receivers to the effect that they should be allowed an unspecified amount as an expense of the receivership to pay the employees of the receivers, including an unspecified amount to Mary Frank Smith. The record does not show that this Mary Frank Smith is the same person as one of the petitioners who has the same name, or, if so, what work she did for the receivers or what amount, if any, she was paid. Her name is omitted from the final order of the court authorizing the sale by the receivers.

It seems to me that these incidental recitals in instruments, affecting only some of the petitioners, should not be taken as a ground for denying the rights of all of the petitioners in this case, especially when there are no pleadings to sustain this defense and nothing to indicate that the case was tried on this theory. I would agree that the case should be remanded for a new trial in order that the respondents could make any proof which they have of consent, waiver, laches, acquiescence, or any similar defense, but I do not think the case should be finally disposed of without a full development of these defenses, if they exist, with an opportunity to the petitioners to reply.

In connection it should be pointed out that all of the respondents pleaded the statutes of limitations as their sole affirmative defense and offered no evidence whatever to sustain these pleas. There was no pleading or evidence to sustain any defense of bona fide purchase without notice.

By way of summary, it is my view that the trust agreement did not authorize the trustees to represent the surviving partner and the devisees and executrix of the deceased partner in the receivership proceedings and that the sale made by the receivers did not divest the petitioners of their title to the property. Because there is some evidence in the case which indicates that there might have been acquiesence or waiver on the part of some of the petitioners, although these defenses have not been pleaded, I think the case can be regarded, under Rules 503 and 505 of the Texas Rules of Civil Procedure, as one which has not been fully or satisfactorily developed and that the justice of the case demands another trial. I would therefore reverse the judgments of both of the lower courts and remand the case to the district court for a new trial.

Opinion delivered November 2, 1949.

Rehearing overruled November 30, 1949.